IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BENITA J. BROWN, CRAIG CONNELLY, and KRISTINE CONNELLY, as individuals and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>PORTER MCGUIRE KIAKONA & CHOW, LLP, a Hawaii limited liability partnership, and EKIMOTO & MORRIS, LLLC, a Hawaii limited liability law company, as individual entities; THE ASSOCIATION OF APARTMENT OWNERS OF TERRAZA/CORTBELLA/LAS BRISAS/TIBURON and ASSOCIATION OF APARTMENT OWNERS OF KO OLINA KAI GOLF ESTATES AND VILLAS, a Hawaii corporation, as individual entities and on behalf of all others similarly situated; DOE DEFENDANTS 1-100,<br><br>    Defendants. | CASE NO. 16-CV-00448-LEK-KSC<br><br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................ 1

II.  FACTUAL BACKGROUND ............................................ 5

III. STANDARD OF REVIEW ............................................. 7

I.   ARGUMENT ...................................................................... 9

    A.   All of the Connelly Plaintiffs' Claims Fail as a Matter of Law Because Defendants Properly Used Part I of Chapter 667 to Foreclose. ................................................................... 9

        1.   HRS chapter 667 .................................................... 10

        2.   An association did not need to hold a mortgage to utilize part I. .............................................................. 12

        3.   HRS § 514A-90(a) allowed associations to foreclose pursuant to "chapter 667," not "part II of chapter 667." ......... 16

        4.   The reference to condo associations in part II did not preclude associations from utilizing part I. ........................... 21

        5.   First Circuit Judge Gary W.B. Chang Recently Ruled that Condominium Associations Were Allowed to Use Part I ....... 22

        6.   Conclusion ............................................................. 23

    B.   The Connelly Plaintiffs' State Law Claims Against E&M Must Be Dismissed Under the Rule Limiting Attorney Liability to Non-Clients. ...................................................................... 23

    C.   The Connelly Plaintiffs' UDAP Claims Fail To State A Cognizable Claim Against E&M. ....................................... 26

        1.   The "Actual Practice" Rule Distinguishes Between the Actual Practice of Law and the Entrepreneurial Aspects of Practice. ........................................................... 26

**TABLE OF CONTENTS**
**(continued)**

Page

2.   The Rationale for the "Actual Practice" Rule is Based on the Rule Limiting Attorney Liability and the "Trade or Commerce" Clause of UDAP Statutes.................................... 29

3.   Similar cases have found no UDAP liability for attorneys. ................................................................. 32

4.   The Connelly Plaintiffs Were Not "Consumers" of E&M's Services........................................................ 34

D.   The FDCPA Claim in Count III Fails as a Matter of Law. ............... 35

IV.   CONCLUSION AND RELIEF REQUESTED ........................................... 36

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Araki v. One W. Bank FSB,*
   2010 WL 5625969 (D. Haw. 2010) .................................................. 35

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ............................................................. 7, 8

*Atl. Cleaners & Dyers v. United States,*
   286 U.S. 427 (1932) .................................................................. 31

*Beaumont v. Morgan,*
   427 F.2d 667 (1st Cir. 1970) ...................................................... 16, 17

*Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court of Santa Clara Cnty.*, 949 P.2d 1 (Cal. 1998) ........................................... 34

*Blair v. Ing,*
   95 Hawai'i 247  (2001) .............................................................. 26

*Buscher v. Bonning,*
   114 Hawai'i 202 (2007) ....................................................... 23, 24, 26

*Carlisle v. One (1) Boat,*
   119 Hawai'i 245 (2008) ............................................................. 3, 18

*Clarendon Holding Co. v. Witherspoon,*
   201 S.E.2d 924 (S.C. 1974) .......................................................... 25

*Cripe v. Leiter,*
   703 N.E.2d 100 (Ill. 1998) .......................................................... 27

*Delesandro v. Longs Drug Stores California, Inc.,*
   383 F. Supp. 2d 1244 (D. Haw. 2005) ................................................ 35

*Discover Bank v. Vaden,*
   396 F.3d 366 (4th Cir. 2005) ........................................................ 18

*Flores v. United Air Lines, Inc.,*
   70 Haw. 1 (1988) .................................................................... 19

*Fought & Co., Inc. v. Steel Eng'g & Erection, Inc.*,
    87 Hawai'i 37, 951 P.2d 487 (1998) .................................................. 33

*Goldfarb v. Virginia State Bar*,
    421 U.S. 773 (1975) ........................................................................ 31

*Goran Pleho, LLC v. Lacy*,
    2016 WL 4082346 (Haw. Ct. App. Jul. 29, 2016) ...................... 28, 29

*Gorbach v. US Bank Nat'l Ass'n*,
    2013 WL 331610 (Mich. Ct. App. 2013) ......................................... 25

*Haynes v. Yale-New Haven Hosp.*,
    699 A.2d 964 (Conn. 1997) .............................................................. 30

*Heslin v. Conn. Law Clinic of Trantolo & Trantolo*,
    461 A.2d 938 (Conn. 1983) .............................................................. 30

*Hough v. Pac. Ins. Co., Ltd.*,
    83 Hawai'i 457 (1996) ..................................................................... 35

*Hunt v. First Ins. Co. of Hawaii, Ltd.*,
    82 Hawai'i 363 (1966) ..................................................................... 35

*In re Water Use Permit Applications*,
    94 Hawai'i 97 (2000) ....................................................................... 21

*Johnson v. AOAO of Ke Aina Kai Townhomes*,
    2006 U.S. Dist. LEXIS 61106 (D. Haw. 2006) .......................... 24, 25

*Keith v. Sioris*,
    2007 WL 544039 (Del. Super. Ct. 2007) ......................................... 25

*Kitamura v. AOAO of Lihue Townhouse*,
    2013 WL 1398058 (D. Haw. 2013) (Kobayashi, J.) ..................... 35, 36

*Kosydor v. Am. Express Centurion Servs. Corp.*,
    979 N.E.2d 123 (Ill. Ct. App. 2012) ................................................ 27

*Larsen Chelsey Realty Co. v. Larsen*,
    656 A.2d 1009 (Conn. 1995) ........................................................ 27, 29

*Levy v. Wells Fargo Bank,*
2011 WL 2493055 (D. Haw. 2011) ....................................................... 8

*Manson v. GMAC Mortg., LLC,*
283 F.R.D. 30 (D. Mass. 2012) .............................................. 32, 33, 34

*Marjorie Webster Jr. College, Inc. v. Middle States Ass'n of Colleges &*
*Secondary Sch., Inc.,* 432 F.2d 650 (D.C. Cir. 1970) .......................... 31

*Moreno Rios v. U.S.,*
256 F.2d 68 (1st Cir. 1958) ............................................................ 3, 22

*O'Connor v. Nantucket Bank,*
2014 WL 198347 ( D. Mass. 2014) ..................................................... 28

*Oahu Plumbing & Sheet Metal, Ltd. v. Kona Constr., Inc.,*
60 Haw. 372 (1979) ............................................................................. 33

*Parkway Unit Owners Ass'n, Inc. v. Shaw,*
2013 WL 3990893 (N.C. App. 2013) ............................................ 13, 14

*Potter v. Haw. Newspaper Agency,*
89 Hawai'i 411 (1999) ....................................................................... 15

*Richardson v. City & Cty. of Honolulu,*
76 Hawai'i 46 (1994) ......................................................................... 21

*Short v. Demopolis,*
691 P.2d 163 (Wash. 1984) ..................................................... 27, 31, 32

*State v. Sullivan,*
97 Hawai'i 259 (2001) ....................................................................... 14

*Stilp v. HSBC Bank USA, N.A.,*
2013 WL 1175025 (D. Minn. 2013) .................................................... 25

*Suffield Dev. Assocs. Ltd. P'Ship v. Nat'l Loan Investors, L.P,*
802 A.2d 44 (Conn. 2002) .............................................................. 30, 32

*Tetrault v. Mahoney, Hawkes & Goldings,*
681 N.E.2d 1189 (Mass. 1997) ...................................................... 28, 32

*Undike, Kelly & Spellacy, P.C. v. Beckett,*
   850 A.2d 145 (Conn. 2004) ................................................................ 27

*Valencia v. Ass'n of Apartment Owners of Palm Villas II,*
   Civil No. 16-1-1294-07 ........................................................ 4, 9, 22, 23

*Vertido v. GMAC Mortg. Corp.,*
   2012 WL 139212 (D. Haw. 2012) ....................................................... 8

*Winters v. Schulman,*
   977 P.2d 1218 (Utah App. 1999) ...................................................... 24

*Woods v. U.S. Bank N.A.,*
   No. 13-36037, 2016 WL 4120687 (9th Cir. Aug. 3, 2016) ................. 7

## STATUTES

Cal. Civ. Proc. Code § 1282.4 ............................................................ 34

HRS chapter 480 ............................................................... 1, 7, 9, 26

Haw. Rev. Stat. § 480-2 ....................................................... 28, 30, 34, 35

Haw. Rev. Stat. § 480-2(a) ................................................................ 30

Haw. Rev. Stat. § 480-2(d) ................................................................ 34

Haw. Rev. Stat. § 480-3 .................................................................... 30

HRS chapter 514A ............................................................................ 5

HRS § 514A-1.5(a)(2) ........................................................................ 5

HRS § 514A-82 ................................................................. 12, 13, 14

HRS § 514A-90 ................................................................... passim

HRS chapter 514B ............................................................................ 5

HRS § 514B-146 ......................................................................... 5, 6

HRS § 667-1 ............................................................................ 10, 15

HRS § 667-5 ............................................................................ 15, 22

HRS § 667-31(a) .................................................................... 11

HRS § 667-40 ....................................................................... 21

N.C. Gen. Stat. § 45-21-16 ................................................... 13

**OTHER AUTHORITIES**

*Black's Law Dictionary* (10th ed. 2014) ................................. 19

## MEMORANDUM IN SUPPORT OF MOTION

### I.   INTRODUCTION

In a condominium project, the association of apartment owners assess all unit owners for their share of the common expenses. The two groups of plaintiffs in this action owned units in two different condominium projects. They do not dispute that they failed to pay their share of common expenses assessed for their units.  The unpaid assessments gave rise to liens in favor of the associations of apartment owners pursuant to Hawaiʻi Revised Statutes (**"HRS"**) § 514A-90(a). Under the statute, the associations had the right to foreclose their liens "by action or by nonjudicial or power of sale foreclosure procedures set forth in chapter 667 … in like manner as a mortgage of real property." HRS § 514A-90(a).  In 2011, the association defendants foreclosed against plaintiffs pursuant to part I of HRS chapter 667 (**"part I"**).

Plaintiffs brought this action against the associations and two law firms that represented the associations in the foreclosure process, asserting claims for declaratory relief, wrongful foreclosure, violations of the Fair Debt Collection Practice Act (**"FDCPA"**), and unfair or deceptive acts or practices (**"UDAP"**) under HRS chapter 480. Specifically, Plaintiff Benita J. Brown (**"Brown"**) challenges the foreclosure conducted by the law firm of Porter McGuire Kiakona & Chow, LLP (**"Porter McGuire"**) on behalf of the Association of Apartment

- 1 -

Owners of Terazza/Cortbella/Las Brisas/Tiburon (the "**Terazza Association**").

And Plaintiffs Craig Connelly and Kristine Connelly (together, "**Connelly**

**Plaintiffs**") challenge the foreclosure conducted by the law firm of Ekimoto &

Morris, LLLC ("**E&M**") on behalf of the Association of Apartment Owners of Ko

Olina Kai Golf Estates and Villas (the "**Ko Olina Association**").[1]

All of Plaintiffs' claims are premised on the argument that, at the time of the

foreclosures at issue, a condominium association was not allowed to foreclose

under part I of HRS chapter 667, but could foreclose only under part II ("**part II**").

Plaintiffs assert that part I required the foreclosing party to possess a mortgage

with a power of sale and that, because an association's lien for unpaid assessments

does not derive from such an instrument, an association could not avail itself of

part I.

The flaw in this argument is that the applicable statute, HRS § 514A-90(a),

expressly granted an association the right to foreclose its lien for unpaid

assessments "by nonjudicial or power of sale foreclosure procedures set forth in

chapter 667 … in like manner as a mortgage of real property." (Emphasis added.)

Thus, for statutory purposes, the lien was treated "like … a mortgage." Plaintiffs

ignore this language or pretend it isn't there. The remedy granted by the statute

should be construed consistent with its purpose, which was to address the problems

---

[1] E&M does not interpret the complaint as asserting any claims by Brown against E&M or the Ko Olina Association.

of "non-delinquent apartment owners who must bear an unfair share of the common expenses" due to owners—like Plaintiffs—who fail "to pay their maintenance and other common expenses." 1999 Haw. Sess. L. ("**HSL**") Act 236 § 1. While Plaintiffs would have preferred for the associations to have used part II, HRS § 514A-90(a) expressly referred to "chapter 667," not "part II of chapter 667." "We cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts." *Carlisle v. One (1) Boat*, 119 Hawai'i 245, 256 (2008).

Plaintiffs also assert that part II included a provision contemplating that it might be used by condominium associations, whereas part I does not mention that it might be used by associations. This distinction is both meaningless and unconvincing. Part I was enacted in 1874 while part II was added more than 100 years later, in 1998. "[T]he maxim *expressio unius est exclusio alterius* … is pretty weak when applied to acts of [the legislature] enacted at widely separated times." *Moreno Rios v. U.S.*, 256 F.2d 68, 71 (1st Cir. 1958). The provision in the condo statute granting associations the power to foreclose by power of sale under "chapter 667" was added in 1999, just a year after part II was added in 1998. Had the legislature intended to limit the associations to foreclosure procedures in "part II of chapter 667," it most certainly would have said so.

This statutory analysis was confirmed by First Circuit Judge Gary W.B. Chang in a recent ruling on September 21, 2016. In *Valencia v. Ass'n of Apartment Owners of Palm Villas II*, Civil No. 16-1-1294-07 GWBC (Haw. 1st Cir. Ct.) ("***Valencia***"), the same claim was made against E&M and the condo association they represented in the foreclosure process in 2010. *See* Ex. 2 (first amended complaint in *Valencia*); Ex. 3 (minutes in *Valencia*). The plaintiffs in *Valencia* were represented by Plaintiffs' local counsel in this action. And E&M was represented in *Valencia* by the same counsel as in this action. E&M moved to dismiss under Rule 12(b)(6), asserting that the association was allowed to use part I. Judge Chang agreed, reasoning that HRS § 514A-90(a) allowed associations to foreclose "by nonjudicial or power of sale foreclosure procedures set forth in chapter 667 … in like manner as a mortgage of real property," and that the provision was not limited to "part II of chapter 667." Accordingly, Judge Chang dismissed the claim with prejudice.

Under settled rules of statutory interpretation and in light of *Valencia*, associations were allowed to foreclose their liens using "nonjudicial or power of sale foreclosure procedures set forth in chapter 667," including part I of chapter 667. Thus, the fundamental premise underlying all of the Connelly Plaintiffs' claims is false. The motion should be granted, therefore, because all of their claims asserted against E&M fail as a matter of law based on the statutory

analysis of chapter 667, as well as for separate and independent reasons. Specifically, the state law claims for declaratory relief, wrongful foreclosure, and UDAP fail under the rule limiting attorney liability. Moreover, the UDAP claim against E&M fails because the attorneys did not act in "trade or commerce," and because the Connelly Plaintiffs were not "consumers" of the attorneys' services when E&M foreclosed on behalf of the Ko Olina Association. Finally, the FDCPA claim fails because the foreclosure process is not "debt collection."

## II.   **FACTUAL BACKGROUND**

The Connelly Plaintiffs were co-owners of Apartment No. M36-4 (the "**Apartment**") of the condominium project in Kapolei known as "Ko Olina Kai Golf Estates & Villas," managed by the Ko Olina Association. Dkt. 1 ("**Complaint**") at 4-5, ¶ 9.

On April 30, 2011, the Ko Olina Association, through counsel, served the Connelly Plaintiffs with a Notice of Sale for the sale of the Apartment pursuant to part I of chapter 667 on June 3, 2011. Ex. 1 (Notice of Sale; Affidavit of Service). On May 4, 11, and 18, 2016, the Notice of Sale was published in the Star-Advertiser and MidWeek. *Id.* (Affidavit of Publication).[2]

---

[2] The Notice of Sale cited HRS § 514B-146 as authority for the association to foreclose. HRS chapter 514A applies to condominiums created before July 1, 2006. HRS § 514A-1.5(a)(2). HRS chapter 514B applies to condominiums created on or after July 1, 2006. *Id.* § 514B-22. Additionally, certain provisions in HRS

On June 3, 2011, the auction was postponed to June 17, 2011, by public announcement. Ex. 1 (Affidavit of Sale ¶ 4(e)).

Plaintiffs allege that Defendants did not hold mortgages containing a power of sale. Complaint at 9, ¶ 21.

The foreclosure sale was conducted around June 17, 2011.  Complaint at 4-5, ¶ 9.  The Ko Olina Association submitted the winning bid for the Apartment and executed a quitclaim deed for it on August 2, 2011. *Id.*  The Connelly Plaintiffs lost possession of the apartment but remained liable for the amounts secured by the mortgage. *Id.*  E&M allegedly acted as the agent or instrumentality of the Ko Olina Association in the nonjudicial foreclosure proceedings. *Id.*

From these operative facts, Plaintiffs allege that the Defendants unlawfully used part I of HRS chapter 667 to conduct the non-judicial foreclosure described above.  Complaint at 7-9.  Plaintiffs contend that the Defendants were required to

---

chapter 514B apply to condominiums created before July 1, 2006, including HRS § 514B-146. *Id.*

At the time of the foreclosure in 2011, in all material respects, HRS § 514B-146 was identical to HRS § 514A-90. Both provided that a condominium association was authorized to foreclose its lien "by nonjudicial or power of sale foreclosure procedures set forth in chapter 667 … in like manner as a mortgage of real property."

The Ko Olina Association's condominium was created prior to July 1, 2006. *See* http://hawaii.gov/dcca_condo/reports/5528F.pdf (Ko Olina Association's Condominium Public Report). Thus, at the time of the foreclosure in 2011, the association was authorized to foreclose under both HRS § 514B-146 and HRS § 514A-90.

have conducted the sale under a different section of the foreclosure statute, the

Alternate Power of Sale Foreclosure Process set forth in part II of chapter 667.

Complaint at 9.

The Complaint states four separate causes of action:

1. Declaratory Relief (Count I);

2. Wrongful Foreclosure (Count II);

3. Violation of FDCPA (Count III); and

4. UDAP pursuant to HRS chapter 480 (Count IV).

## III.   <u>STANDARD OF REVIEW</u>

Under Federal Rules of Civil Procedure ("**FRCP**") Rule 12(b)(6), dismissal

is appropriate where the complaint fails to state a claim upon which relief can be

granted. A Rule 12(b)(6) dismissal is proper where the complaint "lack[s] a

cognizable legal theory or lack[s] sufficient facts alleged under a cognizable legal

theory." *Woods v. U.S. Bank N.A.*, No. 13-36037, 2016 WL 4120687, at *2 (9th

Cir. Aug. 3, 2016).

To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action'" is

insufficient. *Id.* (citing *Twombly*). Likewise, a pleading containing "'naked assertions' devoid of 'further factual enhancement'" does not satisfy the pleading requirements of FRCP Rule 8 and cannot withstand a motion to dismiss for failure to state a claim. *Id.* When considering a Rule 12(b)(6) motion, the Court must accept as true all of the factual allegations in the complaint; however, legal conclusions are not entitled to an assumption of truth. *Id.* at 1949-50. Legal conclusions must be supported by factual allegations for the complaint to survive a motion to dismiss. *Id.* at 1950.

While review on a Rule 12(b)(6) motion is generally limited to the contents of the complaint, "courts may 'consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.'" *Levy v. Wells Fargo Bank*, 2011 WL 2493055, at *1 (D. Haw. 2011) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003)). Thus, the Court may "take[] judicial notice of [a] mortgage, Notice of Mortgagee's Intention to Foreclose Under Power of Sale, [and] Mortgagee's Affidavit of Foreclosure Under Power of Sale, and which are public documents recorded in the Bureau of Conveyances." *Vertido v. GMAC Mortg. Corp.*, 2012 WL 139212, at *1 n.1 (D. Haw. 2012).

## I.  ARGUMENT

### A.  All of the Connelly Plaintiffs' Claims Fail as a Matter of Law Because Defendants Properly Used Part I of Chapter 667 to Foreclose.

The Connelly Plaintiffs do <u>not</u> contend that, in foreclosing pursuant to the procedures of part I, Defendants violated those procedures. Indeed, Plaintiffs concede that, "if Part I applies, the foreclosures were likely proper and might bar this class action." Complaint ¶ 44. Instead, Plaintiffs' argument is that Defendants were not allowed to foreclose pursuant to part I in the first instance and could only use part II. Based on this argument, Plaintiffs assert claims for declaratory relief, *see* Complaint ¶ 42, wrongful foreclosure, *see id.* ¶ 47, violations of the FDCPA, *see id.* ¶ 52, and violations of HRS chapter 480, *id.* ¶ 61.

Plaintiffs' core argument is without merit. Section 1 below summarizes the two parts of chapter 667 that were in effect at the time of the foreclosures here in 2011. Section 2 demonstrates that an association did not need to hold a mortgage to utilize part I. Section 3 reinforces the point that, by its terms, HRS § 514A-90 allowed associations to foreclose pursuant to "chapter 667," not "part II of chapter 667." Section 4 explains that the reference to condo associations in part II did not preclude associations from utilizing part I. Finally, section 5 reviews First Circuit Judge Gary W.B. Chang's ruling in *Valencia* holding that associations were allowed to foreclose pursuant to part I.

### 1.   HRS chapter 667

HRS chapter 667 is the foreclosure statute.  In April 2011, at the time of the

foreclosures at issue here were initiated, chapter 667 had two parts. Part I, entitled

"Foreclosure By Action or Foreclosure By Power of Sale," was first enacted in its

original form more than 150 years ago.  Part II, entitled "Alternate Power of Sale

Foreclosure Process," was added to the statute in 1998.

Part I provided procedures for both judicial and non-judicial foreclosures.  In

other words, foreclosures under Part I could be conducted either "by action," *see*

HRS § 667-1, or by "power of sale," *see id.* § 667-5.

Part II was added to Chapter 667 in 1998 with the passage of Act 122, and

provided an "alternate" power of sale foreclosure process.  Although part II was

ostensibly intended to promote and "streamline" the non-judicial foreclosure

process,[3] there was a significant flaw with the procedures established in part II that

made it impractical and unworkable.  That flaw was this: in order to complete the

sale and purchase of the property, § 667-31(a) required the mortgagor or borrower

to sign the conveyance document transferring his or her interest in the property to

---

[3]   As stated in legislative history to Act 122, which became part II of chapter
667, "the purpose of this bill is to streamline the foreclosure process by setting up a
non-judicial foreclosure system which a lender can utilize to foreclose on a
property without having to obtain a lawsuit and obtain court supervision." 1998
House Journal, at 365 (statement of Rep. Menor.).

the successful bidder.[4]  In many cases, however, the owner and borrower had

already vacated the property.  And even where the owner still lived in the property,

it made little sense to undertake the expense and time of a non-judicial foreclosure

if the whole process might be thwarted in the end by the party being foreclosed on

refusing to sign the conveyance document.  As a result, until part II was amended

in 2011, neither banks nor condominium associations utilized it in conducting

non-judicial foreclosures.[5]  Instead they continued to conduct non-judicial

foreclosures using the power of sale provisions contained in part I.  Indeed, given

the impracticalities of part II, arguably it might have been a breach of the standard

---

[4]      HRS § 667-31(a) provided as follows:
     (a)  After the purchaser completes the purchase by paying the full
purchase price and costs of the purchase, the mortgaged property shall
be conveyed to the purchaser by a conveyance document.  The
conveyance document shall be in a recordable form and shall be
signed by the foreclosing mortgagee in the foreclosing mortgagee's
name.  The mortgagor or borrower shall sign the conveyance
document on his or her own behalf.  (Underscoring added.)

[5]      Haw. Rev. Stat. § 667-31(a) was amended in 2011 to delete the requirement
of obtaining the borrower's signature on the conveyance document.  As amended
in 2011, § 667-31(a) read as follows:
     (a)  After the purchaser completes the purchase by paying the full
purchase price and costs of the purchase, the mortgaged property shall
be conveyed to the purchaser by a conveyance document.  The
conveyance document shall be in a recordable form and shall be
signed by the foreclosing mortgagee in the foreclosing mortgagee's
name.  The mortgagor or borrower shall **not** be required to sign the
conveyance document.  (Underscoring and emphasis added.)

of care for an attorney representing a bank or condominium association to proceed under part II.

### 2.   An association did not need to hold a mortgage to utilize part I.

Plaintiffs assert that associations could not foreclose pursuant to part I because they did not hold mortgages containing a power of sale. Complaint ¶ 21; *see also id.* ¶ 2. Plaintiffs point to a provision in part I, HRS § 667-5, which allowed foreclosure "[w]hen a power of sale is contained in a mortgage."

In 2011, at the time of the foreclosures at issue here, HRS § 514A-90(a) stated that "[t]he lien of the association of apartment owners may be foreclosed by action or <u>by nonjudicial or power of sale foreclosure procedures set forth in chapter 667,</u> by the managing agent or board of directors, acting on behalf of the association of apartment owners, <u>in like manner as a mortgage of real property.</u>" HRS § 514A-90(a) (emphasis added).  The "in like manner as a mortgage" language—which Plaintiffs' complaint does not address—demonstrates that the legislature understood that associations may not hold an actual mortgage and tried to compensate for this by providing authority to foreclose by law. Thus, for statutory purposes, the lien is treated "like ... a mortgage."

Additionally, HRS § 514A-82 governed the contents of association bylaws and "deemed" the bylaws to "incorporate[]" the provision that "[a] lien created pursuant to section 514A-90 may be enforced by the association in any manner

- 12 -

permitted by law, <u>including nonjudicial or power of sale foreclosure procedures authorized by chapter 667</u> ..." HRS § 514A-82(b)(13) (emphasis added). Thus, if Plaintiffs are trying to locate a document "like ... a mortgage" with a power of sale, HRS § 514A-82(b)(13) dictates that the association bylaws include, as a matter of law, the use of all nonjudicial or power of sale foreclosure procedures authorized by chapter 667. Therefore, the bylaws are "like ... a mortgage" that contain a power of sale. In turn, HRS § 514A-82(b)(13) provides that a lien may be enforced "in any manner permitted by law," and HRS § 514A-90 provides an explicit law that permits usage of chapter 667, and not merely part II of chapter 667.

An argument similar to the one Plaintiffs are making here was rejected in *Parkway Unit Owners Ass'n, Inc. v. Shaw*, 2013 WL 3990893 (N.C. App. 2013) (unpublished). There, a homeowners association foreclosed an assessment lien under a statute governing power of sale foreclosures. The statute granted a right of foreclosure to "[t]he mortgagee or trustee granted a power of sale under a mortgage or deed of trust ...." *See* N.C. Gen. Stat. § 45-21-16. The owner claimed that, "in order to pursue foreclosure of the lien, [the association] was required to have a deed or other instrument containing a power of sale." 2013 WL 3990893, at *4. The owner asserted that the association "had no right to foreclose on her property given the absence of a contractual right to foreclose contained in an executed deed

or note," *id.* at \*1, claiming that a "mortgage debt" was an "indisputable requisite," *id.* at \*8. The court rejected this contention in light of a statutory provision stating, very similar to HRS § 514A-90(a), that an association may foreclose its lien "in like manner as a mortgage on real estate under power of sale or under [the power of sale statute] ..." *Id.* at \*5.  Under this statute, the court held that the association "may file a lien against the property and enforce the lien through use of the foreclosure process despite the absence of any instrument containing a power of sale." *Id.* (emphasis added). Thus, even without a mortgage or deed of trust containing a power of sale, based on the statute, the association had the authority to foreclose its lien under the power of sale statute. Likewise, pursuant to HRS §§ 514A-90(a) and -82(b)(13), the association had the authority to foreclose its lien in like manner as a mortgage under part I because the statute fulfills any requirement for a written instrument containing a power of sale.

Subsequent legislative history confirms the conclusion that associations could utilize part I. *See State v. Sullivan*, 97 Hawai'i 259, 266 (2001). In 2012, the legislature created a specific power of sale foreclosure part for associations (part VI). The original bill would have retained the power of sale provisions in part I (which had been re-designated as part IA), though the bill was later modified to repeal the power of sale provisions in part I. In the original version of the bill that designated the power of sale provisions in part I as part IA, the section

introducing the new condo association part stated that "[t]he process in this part is an <u>alternative power of sale process for associations to</u> the foreclosure by action and <u>the foreclosure by power of sale in part IA</u>." H.B. 1875, 24th Leg., Reg. Sess. (2012) (emphasis added). If associations were restricted to using only part II, then there would be no explanation for the reference to an association's choice to use part IA as an "alternative."

Finally, Plaintiffs' "mortgage" argument would render HRS § 514A-90(a) a nullity. Again, Plaintiffs' argument is that, because HRS § 667-5 required a "mortgage" to foreclose and because an association did not hold a mortgage, the association could not foreclose under part I. However, a foreclosure "by action" likewise references foreclosures of a "mortgage." *See* HRS § 667-1 (2006). Thus, taken to its logical conclusion, Plaintiffs' argument would have prevented associations from even foreclosing "by action," a remedy that was plainly provided for in HRS § 514A-90(a). *See Potter v. Haw. Newspaper Agency*, 89 Hawai'i 411, 422 (1999) ("Our rules of statutory construction require us to reject an interpretation of [a] statute that renders any part of the statutory language a nullity."). This is why the provision in HRS § 514A-90(a) stating that the association's lien operates "like … a mortgage" is critical. Just as an association was allowed to foreclose by action "in like manner as a mortgage," so too was the association allowed to foreclose by nonjudicial or power of sale procedures under

chapter 667 "in like manner as a mortgage." The association did not actually need to hold a mortgage to pursue either remedy.

### 3. HRS § 514A-90(a) allowed associations to foreclose pursuant to "chapter 667," not "part II of chapter 667."

As discussed above, HRS § 514A-90(a) refers to "nonjudicial or power of sale foreclosure procedures set forth in chapter 667," not "nonjudicial or power of sale foreclosure procedures set forth in <u>part II of</u> chapter 667." (Underscored text added.) Plaintiffs read a limitation into the statute that simply isn't there. If the legislature meant to refer to only one "part" of "chapter 667" it would have said so.

A similar conclusion was reached in *Beaumont v. Morgan*, 427 F.2d 667 (1st Cir. 1970), where the plaintiff challenged whether a physician had statutory authority to request temporary admission of a patient. The statute at issue provided that, for a physician to make a request for temporary admission of a patient, the physician must have, among other things, "be[en] registered in accordance with Mass. Gen. Laws <u>c. [(chapter)] 112</u>." *Id.* at 670 (emphasis added). That chapter included different types of registrations in separate sections, including sections 2 and 9. The plaintiff's argument was that the "reference to chapter 112 means c. 112 § 2 but not c. 112 § 9." *Id.* The court rejected this contention, reasoning in part that: "Plaintiff's interpretation ignores the plain language of the statute. Had the legislature meant to permit only physicians qualified under § 2 to request care, it

could undoubtedly have said so rather than leaving this significant limitation to judicial inference." *Id.*

Likewise, here, had the legislature meant to permit condo associations to foreclose only under "part II of section 667," it could undoubtedly have said so rather than leaving such a significant limitation to judicial inference. *See id.* Indeed, if the legislature had intended to impose that limit, it had all the more reason to say so given the timing of when the reference to "section 667" was added to the statute. Specifically, the reference to "chapter 667" was added in 1999. *See* 1999 HSL Act 236 § 2. Just the year before, the legislature added part II of chapter 667. 1998 HSL Act 122 § 1. If the legislature had intended for section 514A-90(a) to refer to "part II of chapter 667" and thus limit associations to the procedures in part II of chapter 667, again, it would have said so. It did not. "We hesitate to create legal restrictions without clear statutory mandate ...." *Beaumont*, 427 F.2d at 670.

The legislature is fully capable of imposing clear restrictions by referring to a specific part of a statute. To find an example of this, the Court need not look any further than HRS § 514A-90. In 2012, the legislature amended HRS § 514A-90(a) to state: "provided that no association may exercise the nonjudicial or power of sale remedies provided in chapter 667 to foreclose a lien against any unit that arises solely from fines, penalties, legal fees, or late fees, and the foreclosure of

any such lien shall be filed in court pursuant to <u>part IA of chapter 667</u>." 2012 HSL

Act 182 § 10 (emphasis added). By that point, part IA has been amended to include

only judicial foreclosure procedures. Thus, when the legislature intended for

certain types of association foreclosures to be conducted pursuant to a specific

"part ... of chapter 667," the legislature identified the specific part. Coming back

to the language at issue here, the legislature "could have decided to parse [the

reference to 'chapter 667'] into its component parts.... But [the legislature] chose

not to do so in [HRS § 514A-90(a) when referring to 'chapter 667']. And where

[the legislature] knows how to say something but chooses not to, its silence is

controlling." *See Discover Bank v. Vaden*, 396 F.3d 366, 370 (4th Cir. 2005)

(construing Federal Arbitration Act's reference to "Title 28" as not being limited to

Title 28 § 1332, but rather including both sections 1332 and 1331).

While Plaintiffs would have preferred for the legislature to have required

condominium associations to use "part II of chapter 667," HRS § 514A-90(a)

expressly referred to "chapter 667." The Court "cannot change the language of the

statute, supply a want, or enlarge upon it in order to make it suit a certain state of

facts." *Carlisle*, 119 Hawaiʻi at 256. "We do not legislate or make laws. Even

when the court is convinced in its own mind that the legislature really meant and

intended something not expressed by the phraseology of the act, it has no authority

to depart from the plain meaning of the language used." *Id.* The legislature added

part II in 1998, though in doing so it did not repeal part I. The legislature later placed a moratorium on part I foreclosures in 2011 and ultimately repealed the nonjudicial foreclosure provisions of part I in 2012 after a workable version of part II was enacted and part VI was created for association foreclosures. However, from 1998 to 2011, the legislature kept part I on the books as an available avenue to foreclose.

Further, if there were any doubt as to the meaning of "chapter 667," the clause would need to be construed liberally because HRS § 514A-90(a) is a remedial statute. A remedial law or statute is "[a] statute that corrects or modifies an existing law; esp., a law providing a new or different remedy when the existing remedy, if any, is inadequate." *Black's Law Dictionary* (10th ed. 2014). "A remedial statute is to be construed liberally in order to accomplish the purpose for which it was enacted." *Flores v. United Air Lines, Inc.*, 70 Haw. 1, 2 (1988).

Here, prior to 1999, HRS § 514A-90(a) only stated that an association could foreclose "by action." The clause "or by nonjudicial or power of sale foreclosure procedures set forth in chapter 667" was added 1999 as part of Act 236. In its findings at the beginning of Act 236, the legislature identified the problem of "associations of apartment owners [that] are increasingly burdened by the costs and expenses connected with the collection of delinquent maintenance and other common expenses," which in turn lead to an "increase [in] maintenance fee

assessments due to increasing delinquencies and related enforcement expenses ..."
1999 HSL Act 236 § 1. "This places an unfair burden on those non-delinquent
apartment owners who must bear an unfair share of the common expenses, and is
particularly inequitable when a delinquent owner is also an occupant who has
benefited from the common privileges and services." *Id.* Thus, the legislature
passed Act 236 for the stated purpose of "[c]larify[ing] that associations of
apartment owners may enforce liens for unpaid common expenses by non-judicial
and power of sale foreclosure procedures, as an alternative to legal action ...." *Id.*

In stating these findings and purposes in Act 236, the legislature did not
discuss the different parts of "non-judicial and power of sale foreclosure
procedures" or otherwise evidence an intent to limit "non-judicial and power of
sale foreclosure procedures" to only those procedures found in part II. In this
context, the legislature amended HRS § 514A-90(a) to grant "non-delinquent
apartment owners who must bear an unfair share of the common expenses" as a
result of "delinquent owner[s]" the remedy of "nonjudicial or power of sale
foreclosure procedures set forth in chapter 667." Consistent with its remedial
purpose, the reference to "chapter 667" in HRS § 514A-90(a) should be construed
broadly (and indeed in line with its plain language) as meaning "chapter 667," and
not just "part II of chapter 667." Construing the statute in this way furthers
legislative intent.

### 4.   The reference to condo associations in part II did not preclude associations from utilizing part I.

Plaintiffs contend that an association could only utilize part II because part II references condo associations, whereas part I does not. "[W]here there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." *Richardson v. City & Cty. of Honolulu*, 76 Hawai'i 46, 55 (1994). In this case, there is no "plainly irreconcilable" conflict between part I and part II.  Part II includes a provision (HRS § 667-40) extending power of sale foreclosures to non-mortgage situations, e.g., "those involving … condominium property regimes."  While part I does not speak to the matter, that is not surprising given that part I was created over a century before condominium associations were created by statute. Thus, part I is simply silent on the matter. The two statutes merely overlap in application; each provides an avenue for an association to foreclose its lien.

Further, "where [the legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposefully in the disparate inclusion or exclusion." *In re Water Use Permit Applications*, 94 Hawai'i 97, 151 (2000) (emphasis added). Further, "the maxim *expressio unius est exclusio alterius* is

nothing but an aid to interpretation, and as an aid it is pretty weak when applied to acts of [the legislature] <u>enacted at widely separated times</u>." *Moreno Rios*, 256 F.2d at 71 (emphasis added). Here, parts I and II of chapter 667 were enacted over a century apart. Thus, the reference to condominium property regimes in part II does not imply that condominium associations were allowed <u>only</u> to use part II to foreclose on their liens.

Accordingly, Plaintiffs' contention that a power of sale foreclosure conducted by a condominium association was limited to the procedures set forth in part II of chapter 667 flies in the face of well-settled rules of statutory construction

### 5. First Circuit Judge Gary W.B. Chang Recently Ruled that Condominium Associations Were Allowed to Use Part I.

First Circuit Judge Gary W.B. Chang followed this statutory analysis in the *Valencia* case. Similar to the complaint filed in this action, the unit owners in Valencia argued that the association of apartment owners and its attorneys, E&M, "were not authorized or entitled to conduct a nonjudicial foreclosure or power of sale under Part I," Ex. 2 (complaint in *Valencia*) ¶ 27, because they did not hold "a mortgage containing a power of sale," *id.* ¶¶ 18-19, relying on HRS § 667-5. This is the same claim asserted in this action. Notably, the plaintiffs' counsel in *Valencia* is also Plaintiffs' local counsel in this action. Additionally, E&M's counsel in *Valencia* is also its counsel in this action.

Judge Chang rejected the claim. Ex. 3 (9/21/16 minutes from *Valencia*).

Judge Chang reasoning that HRS § 514B-90(a) allowed associations to foreclose

"by nonjudicial or power of sale foreclosure procedures set forth in chapter 667 …

in like manner as a mortgage of real property," and that the provision was not

limited to "part II of chapter 667." The transcript is not yet available. However,

E&M will submit an excerpt of the transcript once it is available.

### 6.     Conclusion

Based on settled rules of statutory interpretation and in light of *Valencia*,

associations of apartment owners were allowed to foreclose using part I of HRS

chapter 667. Plaintiffs' argument to the contrary is without merit. And, because all

of the Connelly Plaintiffs' claims are premised on that argument, all of their claims

fail as a matter of law and should be dismissed with prejudice.

### B.     The Connelly Plaintiffs' State Law Claims Against E&M Must Be Dismissed Under the Rule Limiting Attorney Liability to Non-Clients.

The Connelly Plaintiffs' state law claims (declaratory relief, wrongful

foreclosure, and UDAP) against E&M fail to state a claim against E&M on a

separate, independent ground:  An attorney is generally not liable to a non-client,

especially an adversary of the attorney's client. *E.g.*, *Buscher v. Bonning*, 114

Hawai'i 202, 220 (2007) ("[Plaintiff's attorney] did not owe Defendants any

actionable duty in the instant case such that Defendants could assert a claim for relief sounding in negligence against him ....").

There are sound reasons for this rule. "Creation of a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest. Not only would the adversary's interests interfere with the client's interests, the attorney's justifiable concern with being sued for negligence would detrimentally interfere with the attorney-client relationship." *Buscher*, 114 Hawai'i at 220. "The basis of our judicial system is the adversarial model, a concept which is foreign to the placement of a duty upon counsel to represent the best interests of both sides." *Winters v. Schulman*, 977 P.2d 1218, 1225 (Utah App. 1999). Further, "[e]xposing legal counsel to liability ... would chill effective advocacy by discouraging attorneys from taking cases for fear of being sued directly for their clients' alleged wrongs." *Johnson v. AOAO of Ke Aina Kai Townhomes*, 2006 U.S. Dist. LEXIS 61106, at *15-*16 (D. Haw. 2006) (dismissing emotional distress claim).

This rule applies in the foreclosure context. For example, in *Johnson*, the plaintiff brought a number of claims against both a foreclosing condominium association (AOAO) and its attorneys (Neeley & Anderson), including a wrongful foreclosure claim against the attorneys. U.S. District Judge Helen Gillmor dismissed the wrongful foreclosure claim with prejudice:

> Plaintiff's wrongful foreclosure claim has no factual basis. First, Neeley acted as counsel for the AOAO in filing the foreclosure

> lawsuit. As discussed above, Neeley was performing its job as counsel
> for the AOAO. Neeley did not owe Plaintiffs, its client's adversary
> with regard to the foreclosure lawsuit, a duty of care.

*Id.* at \*25. Similarly, in *Paik-Apau v. Deutsche Bank National Trust Co.*, U.S.

District Judge Susan Mollway held that a law firm representing a mortgagee in a

non-judicial foreclosure action does not owe the borrower/mortgagor <u>any</u> duty

absent a special relationship. 2012 WL 300417, \*5-\*6 (D. Haw. 2012). The court

explained: "No law creates a general fiduciary duty owed by any law firm to all

individuals." *Id.* at \*5. Thus, an attorney who handles a non-judicial foreclosure

proceeding for a foreclosing condominium association does not owe a duty of care

to the owner of the apartment unit foreclosed upon, especially given that the owner

is adverse to the attorney's client. *See Keith v. Sioris*, 2007 WL 544039, at \*6

(Del. Super. Ct. 2007) ("[W]hen this threat [of foreclosure] was made the

relationship between the [mortgagor] and [mortgagee] was directly adverse.");

*Clarendon Holding Co. v. Witherspoon*, 201 S.E.2d 924, 927 (S.C. 1974) (same);

*Gorbach v. US Bank Nat'l Ass'n*, 2013 WL 331610, at \*2, \*5 (Mich. Ct. App.

2013) (mortgagor was "adverse party" to foreclosing mortgagee's attorney); *Stilp*

*v. HSBC Bank USA, N.A.*, 2013 WL 1175025, at \*2 (D. Minn. 2013) (same).

The exception that the Hawaii Supreme Court has recognized with respect to

the privity rule arises in the estate planning context. Specifically, an attorney may

be liable to a non-client where the non-client is a third-party beneficiary of the

attorney's services. *See Blair v. Ing*, 95 Hawai'i 247, 260–63 (2001) (recognizing attorney's duty to non-client intended beneficiary in estate planning context); *Buscher*, 114 Hawai'i 220 & n.13  (confining *Blair* to the estate planning context).

The claims at issue here do not involve any estate planning work performed by Defendant E&M, nor are Plaintiffs third-party beneficiaries of E&M's services to Defendant Ko Olina Kai AOAO.  Thus, because Plaintiffs are non-clients, the privity requirement bars their state law claims against E&M.

## C. The Connelly Plaintiffs' UDAP Claims Fail To State A Cognizable Claim Against E&M.

Plaintiff's Chapter 480 claim further fails for an independent, though related, reason. The conduct of E&M involves legal services they performed on behalf of their client, Defendant Ko Olina Kai AOAO.  But courts across the country, including Hawai'i, have adapted the rule limiting attorney liability in the UDAP context to hold that the <u>actual practice of law</u> does not constitute conduct in "trade or commerce" and, therefore, cannot be unlawful under state UDAP statutes. Thus, Plaintiffs' Chapter 480 claims fail.

### 1. The "Actual Practice" Rule Distinguishes Between the Actual Practice of Law and the Entrepreneurial Aspects of Practice.

The "actual practice" rule turns on a basic and logical distinction. On the one hand, the rule imposes no UDAP liability for the actual practice of law. *E.g., Cripe v. Leiter*, 703 N.E.2d 100, 105 (Ill. 1998) ("[T]here appears to be little dispute

among the decisions addressing this issue that consumer protection statutes do not

apply to claims arising out of the 'actual practice of law.'"); *see also Kosydor v.*

*Am. Express Centurion Servs. Corp.*, 979 N.E.2d 123, 131 (Ill. Ct. App. 2012)

("Under the reasoning of *Cripe*, claims against an attorney for misconduct in

representing another client while engaged in the practice of law are not allowed

under the Act. Indeed, the holding of *Cripe* has repeatedly been extended by

federal courts beyond suits by clients against their lawyers to claims against

someone else's attorney.") (citations omitted).

On the other hand, UDAP liability may be imposed for the "entrepreneurial"

or "business" aspects of legal practice, i.e., soliciting, billing, and collecting fees

from clients. *E.g., Short v. Demopolis*, 691 P.2d 163, 168 (Wash. 1984); *Larsen*

*Chelsey Realty Co. v. Larsen*, 656 A.2d 1009, 1019 n.19 (Conn. 1995); *see also*

*Undike, Kelly & Spellacy, P.C. v. Beckett*, 850 A.2d 145, 173 (Conn. 2004)

(holding that law firm obtaining business and negotiating fee contracts falls within

entrepreneurial aspect of practice law, stating, "We previously have concluded that

CUTPA does not provide a private cause of action against an attorney by his

client's opponent because such a cause of action would infringe unduly on the

attorney-client relationship. We also have concluded that the entrepreneurial

aspects of the practice of law, such as attorney advertising, remain well within the

scope of CUTPA."). As the Massachusetts Supreme Court explained, "for an

attorney to be liable under [the UDAP statute], he or she must have been acting in a business context." *Tetrault v. Mahoney, Hawkes & Goldings*, 681 N.E.2d 1189, 1195 (Mass. 1997). For this reason, ordinarily "the proper party to assert a [UDAP statute] against an attorney is a client or someone acting on a client's behalf." *Id.; see O'Connor v. Nantucket Bank*, 2014 WL 198347, at *11 ( D. Mass. 2014) ("When a non-client asserts a chapter 93A claim against an attorney, the attorney must have been acting in a business context vis-à-vis plaintiffs.").

This was also the conclusion of the Hawaiʻi Intermediate Court of Appeals in a very recent decision. *Goran Pleho, LLC v. Lacy*, 2016 WL 4082346 (Haw. Ct. App. Jul. 29, 2016) (unpublished memorandum opinion). In that case, the plaintiff, a client of the defendant law firm, asserted that "a lawyer who deceives a client about the value of a company he wishes to purchase, has not only committed malpractice, but also a deceptive trade practice [in violation of Haw. Rev. Stat. § 480-2]." *Id.* at *30. The ICA held the plaintiff improperly raised that argument for the first time on appeal, and accordingly had waived it, but with respect to the validity of that assertion the ICA then went on to state:

> [W]e reject the [plaintiffs]' argument that Chapter 480 applies to [the defendant attorney]'s conduct in his capacity as a practicing attorney in this case.  As other jurisdictions have noted,
>
>> The majority of jurisdictions that have addressed this issue have held that the regulation of attorneys does not fall within the ambit of consumer protection laws. A minority of jurisdictions has carved out an exception for entrepreneurial aspects of the

practice of law, such as advertising and debt collection, while recognizing that claims which allege negligence or legal malpractice are exempt from the consumer protection laws.

*Id.* (*citing Beyers v. Richmond*, 937 A.2d 1082, 1086 (Pa. 2007); *Averill v. Cox*,

761 A.2d 1083, 1088 (N.H. 2000); *Short v. Demopolis*, 691 P.2d 163, 168 (Wash.

1984); *Eriks v. Denver*, 824 P.2d 1207, 1214 (Wash. 1992)).

### 2.   The Rationale for the "Actual Practice" Rule is Based on the Rule Limiting Attorney Liability and the "Trade or Commerce" Clause of UDAP Statutes.

The "actual practice" rule is well-grounded.  It is based in part on the

common law doctrine limiting attorney liability. As the Connecticut Supreme

Court explained, "allowing a plaintiff to sue her opponent's attorney under [the

UDAP statute] would infringe on the attorney-client relationship." *Larsen*, 656

A.2d at 1019. "Providing a private cause of action under [Connecticut's UDAP

statute] to a supposedly aggrieved party for the actions of his or her opponent's

attorney would stand the attorney-client relationship on its head and would

compromise an attorney's duty of undivided loyalty to his or her client and thwart

the exercise of the attorney's independent professional judgment on his or her

client's behalf." *Jackson*, 627 A.2d at 384. Further, UDAP "liability would have a

chilling effect on lawyers' duty of robust representation." *Suffield Dev. Assocs.*

*Ltd. P'Ship v. Nat'l Loan Investors, L.P*, 802 A.2d 44, 54 (Conn. 2002). "[I]t is

important not to interfere with the attorney's primary duty of robust representation

of the interests of his or her client." *Haynes v. Yale-New Haven Hosp.*, 699 A.2d 964, 973 (Conn. 1997) (quotations omitted).

The "actual practice" rule is also based on the typical statutory clause limiting UDAP liability to activities in the conduct of "trade or commerce." Here, Haw. Rev. Stat. § 480-2(a) provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." (Emphasis added.)

In construing the "trade or commerce" clause, the starting point is the interpretation of the federal antitrust laws. As Haw. Rev. Stat. § 480-3 directs, "[t]his chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes, except that lawsuits by indirect purchasers may be brought as provided in this chapter." When Haw. Rev. Stat. § 480-2 was enacted in 1965, "existing [federal] precedents tended to exclude the work of the legal profession from the category of trade or commerce." *Heslin v. Conn. Law Clinic of Trantolo & Trantolo*, 461 A.2d 938, 941 (Conn. 1983).[6] But subsequently "the United States Supreme Court held minimum fee schedules, published by a county

---

[6]    *See also Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 436 (1932) ("Wherever any occupation, employment, or business is carried on for the purpose of profit, or gain, or a livelihood, not in the liberal arts or in the learned professions, it is constantly called a trade." (quotations omitted)); *Marjorie Webster Jr. College, Inc. v. Middle States Ass'n of Colleges & Secondary Sch., Inc.*, 432 F.2d 650, 654 (D.C. Cir. 1970) ("[T]he proscriptions of the Sherman Act were tailored for the business world, not for the noncommercial aspects of the liberal arts and the learned professions." (quotations and asterisks omitted)).

bar association and enforced by the state bar, violated the Sherman Act." *Short*,

691 P.2d at 166 (discussing *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975)).

At the same time, the Court cautioned that "[i]t would be unrealistic to view the

practice of professions as interchangeable with other business activities ...."

*Goldfarb*, 421 U.S. at 788 n.17. In sum, at the time many UDAP statutes were

enacted, "federal law did not consider the learned professions to be part of trade or

commerce, *ergo*, the practice of law cannot constitute trade or commerce." *Short*,

691 P.2d at 168.  Later, however, courts carved a narrow exception to that rule and

found "commercial aspects of the legal profession" could be "trade or commerce."

*Id.*

Against this background, therefore, courts have come to strike a balance.

They do not completely include or totally exclude the practice of law as conduct in

"trade or commerce." Instead, the courts conclude that "certain entrepreneurial

aspects of the practice of law may fall within the 'trade or commerce' definition of

the [UDAP statute]"—those aspects being "how the price of legal services is

determined, billed, and collected and the way a law firm obtains, retains, and

dismisses clients." *Short*, 691 P.2d at 168.  At the same time, "the actual

performance of [a lawyer's] legal advice and services" does not qualify as conduct

in "trade or commerce." *Id.* The actual practice of law has been broadly defined. It

ranges from drafting estate planning documents, *Tetrault*, 681 N.E.2d at 119, to

executing on a judgment, *Suffield Dev. Assocs. Limited P'ship*, 802 A.2d at 53, to

"sending notices regarding potential mortgage loan defaults or conducting a

foreclosure on behalf of a client," *Manson v. GMAC Mortg., LLC*, 283 F.R.D. 30,

43 n.36 (D. Mass. 2012) (emphasis added).

### 3.   Similar cases have found no UDAP liability for attorneys.

The "actual practice" rule has been applied in circumstances similar to the

facts of this case. For instance, in *Jackson*, a landlord and its attorney, through

summary and collection proceedings, evicted a tenant from a trailer park and sold

the tenant's mobile home. 627 A.2d at 375.  The tenant filed a UDAP claim against

the landlord and its attorney alleging, among other things, that they failed to

provide statutory notice to her regarding the sale of the mobile home and that they

conducted the sale in a manner that was not "commercially reasonable," as

required by an execution statute. *Id.* at 382.  Applying the rule limiting attorney

liability, the Connecticut Supreme Court held that the tenant "did not have the

requisite relationship with [the attorney] to allow her to bring suit against him

under [the UDAP statute]." *Id.* at 385.

Similarly, in *Akar* the bank's attorney conducted a power of sale (non-

judicial) foreclosure sale of the borrower's property. 843 F. Supp. 2d 154, *adopted

by entering order on* 2/9/12. The borrower asserted a UDAP claim against the

bank's attorney based on the foreclosure activities. The court dismissed this claim,

explaining that UDAP "claims can be brought against an attorney or a law firm, but only when the attorney or law firm is acting in a business context *vis-a-vis* the plaintiffs." *Id.* at 170 (quotations omitted). The court reasoned:

> In the instant case, there was no business relationship between the plaintiffs and [the attorney]. Rather, the only contact between the parties was on opposing sides of a dispute involving the foreclosure of Akar's Property by [the attorney]'s client, Wells Fargo. This interaction alone is insufficient to warrant a finding of a commercial relationship. Therefore, the plaintiffs have failed to state a claim against [the attorney] under [the UDAP statute].

*Id.* at 171 (quotations and citations omitted).

The practice of law for UDAP purposes is intended to be broadly defined, consistent with the way courts have defined the practice of law in other contexts as "entail[ing] far more than merely appearing in court proceedings." *Fought & Co., Inc. v. Steel Eng'g & Erection, Inc.*, 87 Hawai'i 37, 46, 951 P.2d 487, 496 (1998); *see also Oahu Plumbing & Sheet Metal, Ltd. v. Kona Constr., Inc.*, 60 Haw. 372, 377 n.7 (1979) ("practice of law consists ... of the rendition of any service to a third party, affecting the legal rights ... of such party, ... requir[ing] the use of any degree of legal knowledge, skill or advocacy" (quotations and ellipses omitted)); *Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court of Santa Clara Cnty.*, 949 P.2d 1, 5 (Cal. 1998) (practice of law includes "legal instrument and contract preparation"), *superseded by statute on other grounds,* Cal. Civ. Proc. Code § 1282.4 (providing arbitration exception to unauthorized practice of law

rules). As stated, the practice of law has been defined in the UDAP context as the performance of "customary legal duties," including "<u>sending notices regarding potential mortgage loan defaults or conducting a foreclosure on behalf of a client</u>." *Manson*, *supra*, 283 F.R.D. at 43 n.36 (emphasis added).

### 4. The Connelly Plaintiffs Were Not "Consumers" of E&M's Services.

Standing to bring suit under section 480-2 is limited to "consumers." *See* Haw. Rev. Stat. § 480-2(d) ("No person other than a consumer … may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.") Here, Plaintiffs' UDAP claims also fail because Plaintiffs cannot establish they were "consumers" with respect to E&M. "[T]he Hawaii courts have repeatedly held that an individual is not a consumer, and therefore has no standing to sue under § 480-2, when that person has not either: (1) purchased, attempted to purchase, or been solicited to purchase goods or services <u>from the defendant</u>, or (2) committed money, property, or services in a personal investment." *Delesandro v. Longs Drug Stores California, Inc.*, 383 F. Supp. 2d 1244, 1248 (D. Haw. 2005) (emphases added); *see also Hough v. Pac. Ins. Co., Ltd.*, 83 Hawai'i 457, 470 (1996) ("Hough is not a consumer within the meaning of this statute. He did not purchase workers' compensation insurance from Pacific. He is a third party beneficiary of the contracts of insurance purchased by his employers."); *Hunt v. First Ins. Co. of Hawaii, Ltd.*, 82 Hawai'i 363, 373 (1966) ("[N]owhere in the

record does Hunt indicate or allege that she (1) purchased or attempted to purchase, or was solicited to purchase goods or services from First Insurance or (2) committed money, property, or services in a personal investment. Because she failed to allege the foregoing, Hunt is not a 'consumer' ….").

Here, as non-clients the Plaintiffs could not be "consumers" of E&M's services. As such, they lack standing to bring claim against them under § 480-2. Count IV must accordingly be dismissed.

## D.   The FDCPA Claim in Count III Fails as a Matter of Law.

"[N]on-judicial foreclosures are not 'actions to collect debt' (at least for purposes of the FDCPA)." *Araki v. One W. Bank FSB*, 2010 WL 5625969, at *6 (D. Haw. 2010). Thus, in the context of condominium association foreclosures, this Court has held that "a nonjudicial foreclosure is not an attempt to collect a debt for purposes of the FDCPA." *Kitamura v. AOAO of Lihue Townhouse*, 2013 WL 1398058, at *4 (D. Haw. 2013) (Kobayashi, J.). The reason is that, "[s]ince a transfer in interest is the aim of a foreclosure, and not a collection of debt, the foreclosure proceeding is not a debt collection action under the FDCPA." See id. (quotations omitted). Accordingly, in this case, Plaintiff's claim in Count III that E&M violated the FDCPA by conducting a nonjudicial foreclosure fails as a matter of law.

## IV.   CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, E&M respectfully urges the Court to grant

its motion and dismiss the Complaint with prejudice.

DATED:  Honolulu, Hawaii, September 28, 2016.

CADES SCHUTTE
A Limited Liability Law Partnership


/s/ Peter W. Olson
_____
PETER W. OLSON
CHRISTOPHER T. GOODIN
Attorneys for Defendant
EKIMOTO & MORRIS, LLLC

- 36 -