IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BENITA J. BROWN, ET AL.,          )        CIVIL 16-00448 LEK-KJM
                                  )
            Plaintiffs,           )
                                  )
      vs.                         )
                                  )
PORTER MCGUIRE KIAKONA &          )
CHOW, LLP, a Hawaii limited       )
liability partnership, ET         )
AL.,                              )
                                  )
            Defendants.           )
_____    )

**ORDER DENYING DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF
TERRAZZA/CORTBELLA/LAS BRISAS/TIBURON'S MOTION TO DISMISS;
DENYING DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF
KO OLINA KAI GOLF ESTATES AND VILLAS' MOTION FOR JUDGMENT
ON THE PLEADINGS; GRANTING IN PART AND DENYING IN PART
DEFENDANT EKIMOTO & MORRIS, LLLC'S MOTION TO DISMISS; AND
GRANTING IN PART AND DENYING IN PART DEFENDANT PORTER MCGUIRE
KIAKONA & CHOW, LLP'S SUBSTANTIVE JOINDER IN THE E&M MOTION**

On August 10, 2016, Plaintiffs Benita J. Brown,

Craig Connelly and Kristine Connelly (collectively

"Plaintiffs"),[1] filed their Class Action Complaint ("Complaint").

[Dkt. no. 1.]  On September 28, 2016, Defendant Ekimoto & Morris,

LLLC ("E&M") filed a motion to dismiss the Complaint ("E&M

Motion"), and Defendant the Association of Apartment Owners of

Terrazza/Cortbella/Las Brisas/Tiburon ("Terrazza AOAO") filed its

motion to dismiss ("Terrazza AOAO Motion") on September 29, 2016.

_____

[1] This case is a putative class action, but, until
Plaintiffs move for and obtain class certification, this Court
will only consider the claims that Plaintiffs bring as
individuals.

[Dkt. nos. 40, 42.]  On October 14, 2016, Defendant Porter McGuire Kiakona & Chow, LLP ("PMKC") filed a substantive joinder in the E&M Motion ("PMKC Joinder" or "the Joinder").  [Dkt. no. 65.]  On October 3, 2016, Defendant Association of Apartment Owners of Ko Olina Kai Golf Estates and Villas ("Ko Olina AOAO") filed its Motion for Judgment on the Pleadings on Counts I-IV of Plaintiffs' Class Action Complaint, Filed August 10, 2016 ("Ko Olina AOAO Motion").[2]  [Dkt. no. 46.]

On March 30, 2017, this Court issued an order ruling on the motions to dismiss in a case that presents substantively similar issues and claims as those in the instant case, Galima v. Ass'n of Apartment Owners of Palm Court, et al., CV 16-00023 LEK-KSC ("Galima Order").  2017 WL 1240181.  This Court ordered the parties to file memoranda regarding whether the analysis in the Galima Order applies in the instant case.  [Dkt. no. 76.]  E&M, the Ko Olina AOAO, and the Terrazza AOAO filed their respective memoranda on April 25, 2017.  [Dkt. nos. 80 ("E&M Galima Mem.") 81 ("Ko Olina AOAO Galima Mem."), 83 ("Terrazza AOAO Galima Mem.").]  Also on April 25, 107, PMKC filed a joinder in the E&M Galima Memorandum ("PMKC Galima Joinder").  [Dkt. no. 82.]  On May 9, 2017, Plaintiffs filed their response to Defendants'

---

[2] This Court will refer to the E&M Motion, the Terrazza AOAO Motion, and the Ko Olina AOAO Motion collectively as "the Motions."

memoranda ("Plaintiffs' <u>Galima</u> Memorandum").[3]  [Dkt. no. 84.]

The Court finds these matters suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").[4]  The Terrazza AOAO Motion and the Ko Olina AOAO Motion are hereby denied, and the E&M Motion and the PMKC Joinder are hereby granted in part and denied in part, for the reasons set forth below.

## BACKGROUND

Around August 2004, Plaintiff Benita J. Brown ("Brown") purchased Apartment No. 176 in the condominium project known as "Las Brisas, Phase 15" in Ewa Beach, Hawai`i ("the Brown Unit" and "Las Brisas").  Brown obtained a loan to purchase the unit that was secured by a mortgage on the unit ("Brown Mortgage"). Las Brisas was managed by the Terrazza AOAO.  The Terrazza AOAO, by and through PMKC,[5] gave notice that it would sell the Brown Unit at a public sale pursuant to the former Haw. Rev. Stat. §§ 667-5 to 667-10 ("Chapter 667, Part I").  The public sale was

---

[3] This Court will refer to E&M, PMKC, the Ko Olina AOAO, and the Terrazza AOAO collectively as "Defendants."

[4] This Court finds that neither further briefing nor a hearing is necessary in these matters.  This Court denies Defendants' requests for leave to submit further briefing and for this Court to hold a hearing on the Motions and the Joinder.

[5] PMKC is a law firm and a registered limited liability partnership in Hawai`i.  [Complaint at ¶ 11.]

conducted on or around May 20, 2011, and the Terrazza AOAO submitted the winning bid.  The Terrazza AOAO executed a quitclaim deed on June 9, 2011, and the deed was recorded on the same date.  Brown lost her unit and remains liable for the amounts secured by the Brown Mortgage.  [Complaint at ¶ 8.]  The Terrazza AOAO has taken "possession, control, and enjoyment of the [Brown Unit] and all of its benefits."  [Id.]

Around August 2004, Plaintiffs Craig Connelly and Kristine Connelly ("the Connellys") purchased Apartment No. M36-4 in the condominium project known as "Ko Olina Kai Golf Estates & Villas" in Kapolei, Hawai`i ("the Connelly Unit" and "Ko Olina").  The Connellys obtained a loan to purchase the unit that was secured by a mortgage on the unit ("Connelly Mortgage").  Ko Olina was managed by the Ko Olina AOAO.  The Ko Olina AOAO, by and through E&M,[6] gave notice that it would sell the Connelly Unit at a public sale pursuant to Chapter 667, Part I.  The public sale was conducted on or around June 17, 2011, and the Ko Olina AOAO submitted the winning bid.  The Ko Olina AOAO executed a quitclaim deed on August 2, 2011, and the deed was recorded on August 9, 2011.  The Connellys lost their unit and remain liable for the amounts secured by the Connelly Mortgage.  [Id. at ¶ 9.]  The Ko Olina AOAO has taken "possession, control,

---

[6] E&M is a law firm and a registered limited liability law company in Hawai`i.  [Complaint at ¶ 12.]

and enjoyment of the [Connelly Unit] and all of its benefits." [Id.]

The gravamen of the claims in the instant case is the same as that of the claims in Galima – a condominium association's ability to use the nonjudicial process under the former Chapter 667, Part I.  The Complaint in the instant case alleges the following claims: a claim seeking a declaratory judgment that 1) Defendants were not entitled to use Part I, 2) Defendants were required to use Haw. Rev. Stat. §§ 667-21 through 667-42 ("Chapter 667, Part II"), and 3) because they did not use Part II, the foreclosures were wrongful ("Count I"); [id. at ¶¶ 41-44;] a wrongful foreclosure claim against Defendants ("Count II"); [id. at ¶¶ 45-49;] a claim against PMKC and E&M ("the Law Firm Defendants") for violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. ("Count III"); and a claim against Defendants for unfair or deceptive acts or practices ("UDAP") under Haw. Rev. Stat. Chapter 480 ("Count IV") [id. at ¶¶ 56-66].

Plaintiffs seek the following relief: compensatory, statutory, treble, and punitive damages; restitution and disgorgement of revenues; declaratory and injunctive relief; pre- and post-judgment interest; attorneys' fees and costs; and any other appropriate relief.  [Id. at Prayer for Relief ¶¶ C-H.]

The Law Firm Defendants seek the dismissal of all of

5

Plaintiffs' claims against them with prejudice.  The Terrazza AOAO also seeks the dismissal of all of Plaintiffs' claims, and the Ko Olina AOAO seeks judgment as matter of law as to all of Plaintiffs' claims.[7]

## DISCUSSION

### I.    Whether the *Galima* Analysis of Chapter 667, Part I Applies

In Galima, the defendants made the same argument that Defendants make in the Motions and the Joinder – that the version of Haw. Rev. Stat. § 514B-146(a) in effect at the time of the challenged foreclosures allowed a condominium association to use Chapter 667, Part I or Part II, regardless of whether the association had an agreement with the condominium owner which contained a power of sale provision.[8]

The Terrazza AOAO Motion is based on § 514B-146(a) (2011).  See, e.g., Mem. in Supp. of Terrazza AOAO Motion at 3. The Ko Olina AOAO Motion, the E&M Motion, and the PMKC Joinder are based on Haw. Rev. Stat. § 514A-90(a) (2011).  See, e.g.,

---

[7] The Ko Olina AOAO filed its answer to the Complaint on September 29, 2016.  [Dkt. no. 41.]

[8] The Galima Order analyzed § 514B-146(a) (2010) because the nonjudicial foreclosure sale of the Galimas' unit occurred in 2010.  Galima Order, 2017 WL 1240181, at *2.  The nonjudicial foreclosure sale of the Brown Unit occurred around May 20, 2011, and the nonjudicial foreclosure sale of the Connelly Unit occurred around June 17, 2011.  [Complaint at ¶¶ 8-9.]  Section 514B-146 was amended in 2011, and the amendments became effective on May 5, 2011.  However, amendments did not affect subsection (a) of § 514B-146.  2011 Haw. Sess. Laws Act 48, § 14 at 103, § 45 at 117.

Mem. in Supp. of Ko Olina AOAO Motion at 2; E&M Motion at 3; PMKC Joinder at 5.  For the reasons stated in the <u>Galima</u> Order, 2017 WL 1240181, at *3, this Court concludes that, for purposes of the instant Motions and Joinder, § 514B-146 (2011) applies.  However, this Court notes that § 514A-90(a) (2011) was substantially similar to § 514B-146(a) (2011).  <u>See</u> <u>Galima</u> Order, 2017 WL 1240181, at *3 n.6 (noting that § 514A-90(a) (2010) was substantially similar to § 514B-146(a) (2010)).[9]

In the <u>Galima</u> Order, this Court stated:

> Having examined the relevant statutes, their legislative history, and instructive case law regarding the foreclosure of mortgages, this Court PREDICTS that the Hawai`i Supreme Court would reject Defendants' proposed interpretation of § 514B-146(a) (2010) and would agree with Plaintiffs' proposed interpretation.  Thus, this Court CONCLUDES that, because § 514B-146(a) (2010) required a condominium association to foreclose upon its lien "in like manner as a mortgage of real property," **an association could only use the Chapter 667, Part I foreclosure procedure if it had an agreement with the condominium owner providing for a power of sale.**

2017 WL 1240181, at *9 (bold emphasis added).[10]

---

[9] Section 514A-90 was amended in 2011, and the amendments became effective on May 5, 2011.  However, the amendments did not affect subsection (a) of § 514A-90.  2011 Haw. Sess. Laws Act 48, § 13 at 102, § 45 at 117.

[10] In <u>Galima</u>, the plaintiffs alleged that there was federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over the FDCPA claim and either diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), or supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the state law claims.  <u>Galima</u> Order, 2017 WL 1240181, at *5.  This Court therefore applied Hawai`i

(continued...)

A.    **Section 514A-82(b)(13)**

The Ko Olina AOAO and the Law Firm Defendants first argue that Galima was wrongly decided because this Court failed to consider the fact that every condominium association's bylaws contain a power of sale provision by operation of Haw. Rev. Stat. § 514A-82(b)(13).[11]   Section 514A-82(b) states, in pertinent part:

---

[10](...continued)
substantive law to the state law claims and recognized that it was bound by the Hawai`i Supreme Court's decisions.   However, to the extent the supreme court had not addressed a particular issue of Hawai`i law, this Court had to predict how the supreme court would decide the issue.   Id.

Similarly, Plaintiffs in the instant case allege that there is federal question jurisdiction over the FDCPA claim, and either diversity jurisdiction, pursuant to § 1332(d) – regarding class actions – or supplemental jurisdiction over the state law claims. [Complaint at ¶¶ 4, 6.]   The principles regarding the application of Hawai`i substantive law also apply in this case.

[11] The current version of § 514A-82 is the same as the version that was in effect in 2011.   Chapter 514A applies to condominiums created before July 1, 2006, with certain exceptions, including when the provisions of Chapter 514B identified in Haw. Rev. Stat. § 514B-22 apply.   Haw. Rev. Stat. § 514A-1.5(a)(2)(A); see also Galima Order, 2017 WL 1240181, at *3 (concluding that, based on § 514B-22(1), § 514B-146 (2010) applied).   This Court has concluded that, based on the Galima analysis, § 514B-146 (2011) applies in this case.   The other provisions of Chapter 514A apply in this case because both Las Brisas and Ko Olina were created in 2004.   See Terrazza AOAO Motion, Decl. of David R. Major ("Major Decl."), Exh. B (Declaration of Condominium Property Regime of Las Brisas, Phase 15 ("Las Brisas Declaration"), dated July 1, 2004, and recorded on July 8, 2004); Ko Olina AOAO Motion, Decl. of David J. Minkin, Exh. B (Declaration of Condominium Property Regime of Ko Olina Kai Golf Estates and Villas ("Ko Olina Declaration"), dated March 24, 2004, and recorded on April 29, 2004); see also infra judicial notice discussion regarding the Las Brisas and Ko Olina bylaws.

> In addition to the requirements of subsection (a), the bylaws shall be consistent with the following provisions:
>
> . . . .
>
> (13) A lien created pursuant to section 514A-90 may be enforced by the association in any manner permitted by law, including nonjudicial or power of sale foreclosure procedures authorized by chapter 667; and
>
> . . . .
>
> The provisions of this subsection shall be deemed incorporated into the bylaws of all condominium projects existing as of January 1, 1988, and all condominium projects created after that date.

Defendants do not cite any case in which a court has applied § 514A-82(b)(13) in the broad manner Defendants suggest here, and this Court has been unable to find any.

In this Court's view, it is clear from a plain language reading of § 514A-82(b)(13) that a condominium association may enforce its lien as "**permitted by law**," including the use of the nonjudicial foreclosure process, when it is "**authorized by chapter 667**." (Emphases added.)  In other words, the authority to enforce a condominium association's lien – which is automatically incorporated by operation of law into all condominium associations' bylaws – is the same authority that is described in Chapter 667.  Section 514A-82(b)(13) does not grant condominium associations any greater rights than those that exist under Chapter 667.

9

In the Galima Order, this Court noted:

> [Section] 514B-146(a) (2010) . . . stated that the condominium's foreclosure pursuant to Chapter 667 had to be "in like manner as a mortgage of real property."  Section 667-5(a) (2010) expressly stated, "[w]hen **a power of sale is contained in a mortgage**, and where the mortgagee . . . desires to foreclose under power of sale upon breach of a condition of a mortgage . . . ."  (Emphasis added.)  The Hawai`i Supreme Court [in Santiago v. Tanaka, 137 Hawai`i 137, 154-55, 366 P.3d 612, 629-30 (2016),[12]] has construed this language as **requiring** an agreed upon power of sale in a mortgage in order to invoke the § 667-5 (2010) procedures.

2017 WL 1240181, at *6 (emphases and some alterations in Galima).[13]  Ultimately, this Court concluded that "there are situations when a condominium association cannot use Chapter 667, Part I to foreclose upon its lien – i.e., when the association does not have an agreement with the homeowner providing for a power of sale."  Id. at *7.

## B.   Legislative History of Relevant Condominium Statutes

The Ko Olina AOAO and the Law Firm Defendants also argue that Galima was wrongly decided because, while this Court considered the legislative history of Chapter 667, it did not consider the legislative history of the condominium laws – Chapters 514A and 514B.  First, in Galima, this Court recognized

---

[12] The United States Supreme Court denied the application for a writ of certiorari.  Tanaka v. Santiago, 137 S. Ct. 198 (2016).

[13] Section 667-5(a) (2011) contains the same language that this Court relied upon in the Galima analysis.

10

that, in interpreting a provision of the Hawai`i Revised
Statutes: its first duty was to look at the statute's plain
language; id. at *7 n.11; and it only considered legislative
intent when the statute's language was ambiguous, id. at *7 n.12.
Second, this Court's conclusion that a condominium association
could not use Chapter 667, Part I to foreclose upon its lien when
it did not have an agreement with a power of sale was based on "a
plain language reading" because "the statutes in question (as
interpreted by the Hawai`i Supreme Court) [we]re unambiguous."
Id. at *7.  This Court expressly stated that it could stop its
analysis there, but went on to discuss "the legislative intent
behind the 2010 versions of the statutes in question" because the
legislative intent was consistent with this Court's
interpretation of Chapter 667.  Id.  Thus, the conclusion in
Galima was not dependent upon the legislative history of Chapter
667, and its discussion of that legislative history did not
require it to discuss the legislative history of Chapters 514A
and 514B.  None of the relevant sections of Chapters 514A and
514B were found to be ambiguous and, therefore, the argument that
Galima was wrongly decided because this Court failed to look at
the legislative history of Chapters 514A and 514B is soundly
rejected.

     Although the plain language of the relevant statutes is
unambiguous, this Court has the discretion to consider the

legislative history of Chapters 514A and 514B.   See Friends of Makakilo v. D.R. Horton-Schuler Homes, LLC, 134 Hawai`i 135, 139, 338 P.3d 516, 520 (2014) ("Yet, even if the plain language of a statute is clear, this court **can** nevertheless consider legislative history to ensure its interpretation of the statute does not produce an absurd result contrary to legislative intent." (emphasis added)).   However, even if the legislative history presented in this case was considered,[14] the Galima analysis remains unchanged.   In particular, the Ko Olina AOAO and the Law Firm Defendants urge this Court to consider Act 236, which enacted subsection (13) of § 514A-82(b) and amended § 514A-90(a)(2) to add the "or by nonjudicial or power of sale foreclosure procedures set forth in chapter 667."   See 1999 Haw. Sess. Laws Act 236, § 3 at 725-27, § 4 at 727-29.   Act 236 states:

---

[14] The Ko Olina AOAO and the Law Firm Defendants make various unsupported statements about the circumstances they assert gave rise to the relevant legislative actions.   See, e.g., E&M Galima Mem. at 7 ("condominium associations were in a very difficult position financially after 6-7 years of an economic downturn" and "judicial foreclosures by the lender often took a year or more to complete, and in the end the association's lien for maintenance fees was typically wiped out because the foreclosure auction price was insufficient to pay off even the lender's first mortgage lien"); id. at 10 (discussing lobbying efforts by condominium associations in 1999).   Even if proper documentation had been provided to support their statements, such information is not permissibly considered in a motion to dismiss. This Court has only considered the contents of Act 236, and the committee reports that preceded the passage of the act.

The legislature finds that associations of apartment owners are increasingly burdened by the costs and expenses connected with the collection of delinquent maintenance and other common expenses.

The legislature further finds that the number of foreclosures in this State has greatly increased, and that associations of apartment owners are often required to bear an unfair share of the economic burden when purchasers in foreclosure actions exercise rights of ownership over purchased apartments without paying their share of common maintenance fees and assessments.

The legislature further finds that more frequently associations of apartment owners are having to increase maintenance fee assessments due to increasing delinquencies and related enforcement expenses.  This places an unfair burden on those non-delinquent apartment owners who must bear an unfair share of the common expenses, and is particularly inequitable when a delinquent owner is also an occupant who has benefited [sic] from the common privileges and services.

The legislature further finds that there is a need for clarification regarding the authority of associations of apartment owners to use non-judicial and power of sale foreclosure procedures to enforce liens for unpaid common expenses.

The legislature further finds that there is a need for clarification as to where associations of apartment owners may deposit or hold their funds, and how they may invest their funds.

The purpose of this Act is to:

(1)  Allow associations of apartment owners to collect delinquent maintenance and common expenses directly from the tenant of a delinquent owner;

(2)  Clarify the law by specifying when a purchaser in a foreclosure action becomes responsible for assessments and maintenance fees;

13

(3)  Allow associations of apartment owners the alternative remedy for collecting fees and expenses from delinquent owner-occupants by withholding common privileges and terminate common services to owner-occupied apartments until the delinquent sums are paid;

(4)  **Clarify that associations of apartment owners may enforce liens for unpaid common expenses by non-judicial and power of sale foreclosure procedures, as an alternative to legal action**;

(5)  Specify where and in what types of investments associations of apartment owners may place their funds.

Id., § 1 at 723-24 (emphasis added).  The Law Firm Defendants argue that § 514A-82(b)(13) is "remedial legislation" that "should be construed liberally in favor of creating a power of sale in the bylaws."  [E&M Galima Mem. at 18.]

While the Law Firm Defendants are correct that "[r]emedial statutes are liberally construed to suppress the [perceived] evil and advance the [enacted] remedy," see Cieri v. Leticia Query Realty, Inc., 80 Hawai`i 54, 68, 905 P.2d 29, 43 (1995) (some alterations in Cieri) (citations and quotation marks omitted), they fail to cite any case supporting their characterization of § 514A-82(b)(13) as a remedial statute, nor any law characterizing Chapters 514A or 514B as a remedial statute.  This Court is simply not aware of any.  The Hawai`i Supreme Court has stated: "Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of

14

injuries." <u>Kalima v. State</u>, 111 Hawai`i 84, 100, 137 P.3d 990,
1006 (2006).  Simply put, finding that § 514A-82(b)(13) is a
remedial statute because the Legislature sought to facilitate
condominium associations' use of the existing lien foreclosure
remedy would be an impermissibly broad application which could
lead to almost every statute that the Legislature amends being
characterized as a "remedial statute."  This is inconsistent with
the limited type of statutes that the Hawai`i courts have
characterized as remedial.  <u>See, e.g.</u>, <u>Davis v. Four Seasons
Hotel Ltd.</u>, 122 Hawai`i 423, 430, 228 P.3d 303, 310 (2010)
(characterizing Haw. Rev. Stat. Chapter 480, titled "Monopolies;
Restraint of Trade," as remedial); <u>Kalima</u>, 111 Hawai`i at 100,
137 P.3d at 1006 (Haw. Rev. Stat. Chapter 674);[15] <u>Furukawa v.
Honolulu Zoological Soc'y</u>, 85 Hawai`i 7, 17, 936 P.2d 643, 653
(1997) (Haw. Rev. Stat. Chapter 378, titled "Employment
Practices"); <u>Dawes v. First Ins. Co. of Hawai`i</u>, 77 Hawai`i 117,
122-23, 883 P.2d 38, 43-44 (1994) (uninsured motors statutes like
Haw. Rev. Stat. § 431:10C-301(b)(3)); <u>Castro v. Melchor</u>, 137
Hawai`i 179, 189-90, 366 P.3d 1058, 1068-69 (Ct. App. 2016) (Haw.

---

[15] Chapter 674 "establishes a 'process under which
individual beneficiaries under the Hawaiian home lands trust may
resolve claims for actual damages,' for past breaches of trust."
<u>Kalima</u>, 111 Hawai`i at 100, 137 P.3d at 1006 (quoting Haw. Rev.
Stat. § 674-1).

Rev. Stat. § 663-3),[16] *cert. granted*, No. SCWC-12-0000753, 2016 WL 3218858 (Hawai\`i June 9, 2016).  Section 514A-82(b)(13) is dissimilar to the types of statutes that the Hawai\`i courts have held to be remedial.  This Court therefore predicts that the Hawai\`i Supreme Court would reject the argument that § 514A-82(b)(13) is a remedial statute.

The Legislature did expressly clarify that condominium associations could use "non-judicial and power of sale foreclosure procedures, as an alternative to legal action."  See 1999 Haw. Sess. Laws Act 236, § 1 at 724.  It did so by adding the language "or by non-judicial or power of sale foreclosure procedures set forth in chapter 667" to § 514A-90(a).  Id., § 4 at 727.  Significantly, it did not change the language "in like manner as a mortgage of real property."  Id.  These amendments to § 514A-90(a), coupled with the addition of § 514A-82(b)(13) – with its "any manner permitted by law" and "authorized by chapter 667" language – do not evince a clear legislative intent to create a legal scheme that incorporated a power of sale into **every** condominium association's bylaws.  Such a scheme would automatically allow every association to utilize the nonjudicial or power of sale process, arguably giving any association lien

---

[16] Section 663-3 "creates a statutory right for non-dependent relatives to sue for wrongful death, a right which did not exist under common law."  Castro, 137 Hawai\`i at 189, 366 P.3d at 1068.

for unpaid assessments priority over any mortgage on the unit, because any condominium association could utilize Chapter 667, Part I, whereas the mortgagee could only use Part I if it had an agreed upon power of sale.

The Ko Olina AOAO and the Law Firm Defendants' legislative history argument is contrary to the plain language of § 514A-82(b)(13) and § 514A-90(a)/§ 514B-146(a).  In order to conclude that a statute's legislative intent overrides the statute's plain language, there must be a "clear statement of intent."  Peer News LLC v. City & Cty. of Honolulu, 138 Hawai`i 53, 69, 376 P.3d 1, 17 (2016); see also State v. Savitz, 97 Hawai`i 440, 444, 39 P.3d 567, 571 (2002) ("Absent strong legislative history to the contrary, we follow the plain language of the statute.").  No clear statement of intent exists here to make each condominium association automatically eligible to use the nonjudicial/power of sale foreclosure process by creating a power of sale in each association's bylaws.  In fact, the defense's interpretation appears to be **contrary** to the Legislature's intent behind Act 236.  See, e.g., H. Stand. Comm. Rep. No. 1738, in 1999 House Journal, at 1706 (identifying one of the purposes of Senate Bill 36 as "[p]roviding the association a **limited** lien priority over mortgages to collect unpaid common assessments" (emphasis added)); S. Stand. Comm. Rep. No. 845, in 1999 Senate Journal, at 1297 (noting that the committee amended

17

Senate Bill 36 by "[g]iving judicial foreclosure actions priority over actions by the association to make collections").   The legislative history of Act 236 indicates that the Legislature allowed condominium associations to use the nonjudicial or power of sale foreclosure process when their use of the process was consistent with Chapter 667.

The Ko Olina AOAO and the Law Firm Defendants also argue that, when the Legislature passed Act 236, it intended to allow every condominium association to utilize Chapter 667, Part I because Part II was essentially unusable.  Haw. Rev. Stat. § 667-31(a) (1999) stated:

> After the purchaser completes the purchase by paying the full purchase price and the costs for the purchase, the mortgaged property shall be conveyed to the purchaser by a conveyance document.  The conveyance document shall be in a recordable form and shall be signed by the foreclosing mortgagee in the foreclosing mortgagee's name.  **The mortgagor or borrower shall sign the conveyance document on his or her own behalf.**

(Emphasis added.)  The Ko Olina AOAO argues that "Part II was completely untenable because the whole process could be thwarted at the very end by the delinquent member's refusal to sign the conveyance document."  [Ko Olina AOAO <u>Galima</u> Mem. at 10.] Practically speaking, this difficulty was likely part of the reason why the Legislature passed Act 236 and clarified that condominium associations could use the nonjudicial/power of sale foreclosure process.  However, this problem with § 667-31(a) is

18

not evidence that the Legislature specifically addressed associations' use of the nonjudicial/power of sale foreclosure process by incorporating a power of sale in every association's bylaws.  Again, the Ko Olina AOAO and the Law Firm Defendants' legislative history argument is contrary to the plain language of § 514A-82(b)(13) and § 514A-90(a)/§ 514B-146(a), and Act 236 does not provide the "clear statement of intent" necessary to override the plain language of those statutes.[17]

Having considered the legislative history of Chapters 514A and 514B, there is no clear statement of intent sufficient to override the plain language of the relevant statutes.  Further, the legislative history does not indicate that this Court's interpretation of the relevant statutes leads to absurd results.  Thus, the legislative history of Chapters 514A and 514B does not require departure from the Galima analysis.

---

[17] The argument that § 514A-82(b)(13) must be interpreted to include a power of sale in every set of bylaws is even less persuasive as to Plaintiffs.  In 2011, the Legislature amended § 667-31(a) and changed the last sentence to read: "The mortgagor or borrower shall not be required to sign the conveyance document."  2011 Haw. Sess. Laws Act 48, § 29 at 112-13.  As E&M acknowledges, this amendment "eliminated" the "fatal flaw" in § 667-31(a).  [E&M Galima Mem. at 9.]  The amendment to § 667-31(a) took effect upon the approval of Act 48 on May 5, 2011. 2011 Haw. Sess. Laws Act 48, § 45 at 117.  The foreclosure sales of the Brown Unit and the Connelly Unit occurred after May 5, 2011.  [Complaint at ¶¶ 8-9.]  Thus, Brown and the Connellys were not required to sign the respective conveyance document, and Defendants could have used the Chapter 667, Part II (2011) process to foreclose.

For all of the foregoing reasons, the analysis of Chapter 667, Part I in <u>Galima</u> is reaffirmed and is applied in this case.  To the extent that the Motions and the Joinder ask for a conclusion that condominium associations could freely elect between the Chapter 667, Part I foreclosure procedure and the Part II procedure, the Motions and the Joinder are denied.

**II.   <u>Whether the <i>Galima</i> Analysis is Satisfied</u>**

Defendants argue that <u>Galima</u> did not reach the issue of whether the relevant condominium documents contained an agreed upon power of sale.  They contend that the relevant condominium documents in this case contain agreed upon power of sale provisions.

A condominium's governing documents "are contractual obligations" between the condominium association and a condominium owner.  <u>See</u> <u>Lawson v. Ass'n of Apartment Owners of Wailea Point Vill.</u>, CIVIL NO. 15-00449 DKW-KSC, 2016 WL 7493618, at *10 (D. Hawai`i Dec. 30, 2016) (agreeing "that the Governing Documents are contractual obligations that concern the same subject matter as the [plaintiffs'] promissory estoppel claim" and concluding that, because the [plaintiffs] had a legal remedy against the [condominium association] for breach of the condominium's declaration, they could not pursue a promissory estoppel claim).  In <u>Lawson</u>, the district court referred to the condominium's declaration, bylaws, and house rules as the

20

governing documents.  Id. at *1.  For purposes of the Motions and
the Joinder, Ko Olina's and Las Brisas's declaration of
condominium property regime and bylaws are referred to as each
condominium's respective "Governing Documents."[18]  E&M also
submitted the Apartment Deed, Encumbrances and Reservations of
Rights for Ko Olina Kai Golf Estates and Villas for the Connelly
Unit ("Connelly Deed"), and the Terrazza AOAO submitted the Las
Brisas, Phase 15 Apartment Deed for the Brown Unit ("Brown Deed,"
collectively "the Deeds").  [Olson Decl., Exh. 4; Major Decl.,
Exh. A.]

       As a general rule, the scope of review in considering a
motion to dismiss is limited to the allegations in the complaint.
See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th
Cir. 2010).  Consideration of other materials ordinarily requires
the district court to convert a motion to dismiss into a motion
for summary judgment.  Yamalov v. Bank of Am. Corp., CV. No.
10-00590 DAE-BMK, 2011 WL 1875901, at *7 n.7 (D. Hawai`i May 16,
2011) (citing Parrino v. FHP, Inc., 146 F.3d 699, 706 n.4 (9th

---

[18] The Bylaws of Association of Apartment Owners of Ko Olina
Kai Golf Estates and Villas ("Ko Olina Bylaws") and the Ko Olina
Declaration are attached to the E&M Motion as Exhibits 5 and 6,
respectively, to the Declaration of Peter W. Olson ("Olson
Declaration").  [Dkt. nos. 80-3, 80-4.]  The Las Brisas
Declaration and the By-laws of the Association of Apartment
Owners of Las Brisas, Phase 15 ("Las Brisas Bylaws") are attached
to the Major Declaration as Exhibits B and C, respectively.
[Dkt. nos. 83-3, 83-4.]

Cir. 1998)).[19]  However, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Daniels-Hall, 629 F.3d at 998 (citations and internal quotation marks omitted).  Matters subject to judicial notice may also be considered.  Cf. Thomas v. Fin. Recovery Servs., No. EDCV 12–1339 PSG (Opx), 2013 WL 387968, at *2 (C.D. Cal. Jan. 31, 2013) ("It is well-settled that . . . matters that are subject to judicial notice may also be considered in evaluating a motion for judgment on the pleadings." (citing Buraye v. Equifax, 625 F. Supp. 2d 894, 896–97 (C.D. Cal. 2008); Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc., 583 F.2d 426, 429–30 & n.2 (9th Cir. 1978))).

First, the Complaint does not refer to either the Governing Documents or the Deeds, and – to the extent that Defendants seek to establish that the Terrazza AOAO and the Ko Olina AOAO[20] each had a power of sale – the documents are central to a defense, not to Plaintiffs' claims.  The Governing Documents and the Deeds therefore do not constitute evidence upon which the

_____

[19] Parrino was superseded by statute on other grounds, as stated in Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 681–82 (9th Cir. 2006) (per curiam).

[20] The Terrazza AOAO and the Ko Olina AOAO are referred to collectively as "the AOAO Defendants."

Complaint necessarily relies.

Second, this Court "may take judicial notice of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). Arguably, because Defendants ask to consider the **contents** of the Governing Documents and the Deeds – as opposed to the fact that those documents were publicly recorded on certain dates, consideration of those documents would require the conversion of the Motions into motions for summary judgment. See, e.g., Hirota v. Gen. Nutrition Corp., CIVIL 15-00191 LEK-KSC, 2015 WL 6673688, at *2-3 (D. Hawai`i Oct. 29, 2015) (noting that this Court could take judicial notice of the docket in the plaintiffs' bankruptcy proceedings and filing of specific documents, but converting the motion to dismiss into a motion for summary judgment because "it [was] necessary to consider the contents of the [plaintiffs'] filings in the Bankruptcy Court, not only the Bankruptcy Court's rulings or the fact that the [plaintiffs] filed certain documents"). However, Plaintiffs do not challenge the authenticity of the submitted copies of the Governing Documents and the Deeds. See Pltfs.' Galima Mem. at 2-3 n.2 (arguing that the submission of the exhibits was "inappropriate and improper" but arguing that "the Court's review of Defendants' exhibits will only strengthen the argument that Defendants' acts were unfair, deceptive, and wrongful"). Judicial notice therefore is taken of

the Governing Documents and the Deeds, and it is unnecessary to convert the Motions into motions for summary judgment.

Brown agreed to comply with, and accepted, the Las Brisas Bylaws, and the Connellys agreed to comply with, and accepted, the Ko Olina Bylaws. [Brown Deed at 6-7, § 4; Connelly Deed at 5.] The Las Brisas Bylaws state: "Upon recordation of a duly executed original or copy of [a] lien [for an owner's default on assessment obligations], the Board shall have all remedies provided in the Act."[21] [Las Brisas Bylaws at 33, art. VI, § 4(c).] Similarly, the Ko Olina Bylaws state: "Upon recordation of a duly executed original or copy of such notice of lien at the Office, the Board shall have all remedies provided in the Act."[22] [Ko Olina Bylaws at 27, art. VI, § 4(b).]

Plaintiffs agreed to the terms regarding enforcement of liens for delinquent assessments. However, these provisions do not grant the respective AOAOs powers of sale but merely confirm that the AOAO Defendants can exercise the remedies available in

---

[21] "'Board' means the Board of Directors of the Association of Apartment Owners." [Las Brisas Bylaws at 2, art. I, § 1(e).] "The 'Act' means the Condominium Property Act, Chapter 514A, Hawaii Revised Statutes (1978), as amended." [Id., § 1(h).]

[22] "Office," "Board," and "Act" are defined in the Ko Olina Declaration. [Ko Olina Bylaws at 2, art. I, § 3.] "'Office' means the Office of the Registrar of the Land Court of the State of Hawaii." [Ko Olina Decl. at 6, § I.B.31.] "'Board means the Board of Directors of the" Ko Olina AOAO. [Id. at 3, § I.B.5-6.] "Act" is defined as Chapter 514A, as amended. [Id. at 2; id. at 3, § I.B.1.]

Chapter 514A – and Chapter 514B, to the extent it later replaced Chapter 514A.  The AOAO Defendants could enforce their liens pursuant to § 514B-146(a) (2011), which was substantively identical to § 514B-90(a) (2011).  Defendants have not identified any other provision in the applicable Deed or the Governing Documents that granted the respective AOAO a power of sale.  The Complaint also alleges that neither the Terrazza AOAO nor the Ko Olina AOAO had a power of sale.  [Complaint at ¶ 21.]  For purposes of the instant Motions and Joinder, neither the Terrazza AOAO nor the Ko Olina AOAO had an agreed upon power of sale, and therefore Defendants have not satisfied the Galima analysis.

Count I – which seeks a declaratory judgment that Defendants' foreclosures of Plaintiffs' units under Chapter 667, Part I were not proper and that Part II applied – states a plausible claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007))).  The Motions and the Joinder are therefore denied as to Count I.[23]

---

[23] The Law Firm Defendants' argument that Galima requires the dismissal of Count I against them is rejected.  Galima did not have a claim for a declaratory judgment.

### III. __Count II – Wrongful Foreclosure__

#### A.    __The Law Firm Defendants__

For the reasons stated in the <u>Galima</u> Order, Plaintiffs cannot pursue a wrongful foreclosure claim against the Law Firm Defendants.  2017 WL 1240181, at *10-11.  The E&M Motion and the PMKC Joinder are therefore granted insofar as Plaintiffs' claims in Count II against the Law Firm Defendants are dismissed with prejudice.

#### B.    __The AOAO Defendants__

Plaintiffs' Complaint alleges that, although Defendants gave notice and conducted the public sale of the Brown Unit and the Connelly Unit pursuant to Chapter 667, Part I, they were required to use Chapter 667, Part II because the AOAO Defendants did not have powers of sale.  [Complaint at ¶¶ 8-9, 21.] Plaintiffs allege that they suffered damages because of the AOAO Defendants' wrongful use of Chapter 667, Part I because, had the AOAO Defendants complied with Chapter 667, Part II, Plaintiffs would not have lost their respective units.  [<u>Id.</u> at ¶ 23.] These allegations are sufficient to state the elements of wrongful foreclosure claims against the AOAO Defendants.

The Terrazza AOAO argues that Plaintiffs are improperly attempting to relitigate issues that Plaintiffs should have raised in response to the foreclosure process, which was more than five years before the filing of the Complaint.  To the

extent that the Terrazza AOAO alleges that Count II should be dismissed as untimely, the argument is rejected for the reasons a similar argument was rejected in <u>Galima</u>.  <u>See Galima</u> Order, 2017 WL 1240181, at *10.

Because Plaintiffs have sufficiently pleaded the elements of their wrongful foreclosure claims against the AOAO Defendants, and this Court concludes – for purposes of the Terrazza AOAO Motion and the Ko Olina AOAO Motion only – that the claim is timely, the Terrazza AOAO Motion and the Ko Olina AOAO Motion are denied as to Plaintiffs' claims against the AOAO Defendants in Count II.[24]

## IV.  Count III – UDAP Claim

### A.  The Law Firm Defendants

For the reasons stated in the <u>Galima</u> Order, Plaintiffs cannot pursue a UDAP claim against the Law Firm Defendants.  2017 WL 1240181, at *14-15.  The E&M Motion and the PMKC Joinder are therefore granted insofar as Plaintiffs' claims in Count III against the Law Firm Defendants are dismissed with prejudice.

### B.  The AOAO Defendants

#### 1.  Standing

The Court first turns to the argument that Plaintiffs

---

[24] To the extent that the AOAO Motion raises any other arguments regarding Count II that are not expressly addressed in this section, those arguments are also rejected.

lack standing to bring a UDAP claim against the AOAO Defendants. Haw. Rev. Stat. § 480-2(a) states, in pertinent part, "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 480-2(d) states: "No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section." For purposes of Chapter 480: "'Consumer' means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." Haw. Rev. Stat. § 480-1.

Plaintiffs are natural persons. Brown purchased her unit for $270,000 and obtained a $262,000 loan to do so. [Complaint at ¶ 8.] The Connellys purchased their unit for $830,000 and obtained a $625,000 loan to do so. [Id. at ¶ 9.] Plaintiffs allege that they paid these monies, as well as the monies the AOAO Defendants collected for condominium management and maintenance services, for personal investment. [Id. at ¶ 59.] Taking these factual allegations to be true, see Twombly, 550 U.S. at 572 ("a judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint" (citations and internal quotation marks omitted)), the allegations support a reasonable

inference that Plaintiffs are consumers for purposes of § 480-1. See Cieri, 80 Hawai`i at 67, 905 P.2d at 42.

### 2.   Trade or Commerce

For the reasons stated in the Galima Order, the AOAO Defendants' placement of liens on Plaintiffs' respective units for unpaid assessments and their foreclosures of those liens occurred in the business context, and the AOAO Defendants' conduct may give rise to a UDAP claim.   See 2017 WL 1240181, at *15.

### 3.   Timeliness

A four-year statute of limitations applies to Plaintiffs' UDAP claims against the AOAO Defendants, and the period started to run when the AOAO Defendants' alleged violations occurred.   See id. at *15-16 (citing Lowther v. U.S. Bank, N.A., 971 F. Supp. 2d 989, 1008 (D. Hawai`i 2013)).   The public foreclosure sale of the Brown Unit occurred on or about May 20, 2011, and the sale of the Connelly Unit occurred on or about June 17, 2011.   The quitclaim deed for the Brown Unit was recorded on June 9, 2011, and the quitclaim deed for the Connelly Unit was recorded on August 9, 2011.   [Complaint at ¶¶ 8-9.] Even assuming that the nonjudicial foreclosure processes were not complete until, and the alleged UDAP violations ended on, those dates, Plaintiffs failed to bring this action within four years of the date the respective quitclaim deeds were recorded.   Thus,

Plaintiffs' UDAP claims against the AOAO Defendants are time-barred unless the limitations periods may be tolled.

As in Galima, Plaintiffs contend that the statute of limitations periods were tolled because Defendants fraudulently concealed the fact that the AOAO Defendants were not authorized to foreclose under Chapter 667, Part I.  Plaintiffs allege:

> 24.  Defendants fraudulently concealed the wrong they were committing by implying, stating, and/or representing that they were authorized to conduct nonjudicial foreclosures or public sales under Part I.

> 25.  Under Hawai`i law, a condominium association has a fiduciary relationship with its members.  Given the special relationship between the homeowner associations that comprise the defendant class and plaintiffs who are members of those associations, plaintiffs were entitled to rely on and did rely on the statements and representations made by defendants concerning defendants' right to conduct public sales under Part I.

> . . . .

> 27.  Plaintiffs did not discover the claims against defendants that they assert herein until May of 2016.

[Complaint at ¶¶ 24-25, 27.]  For the reasons stated in the Galima Order,[25] Plaintiffs have pleaded sufficient factual allegations to support a reasonable inference that equitable

_____

[25] See Galima Order, 2017 WL 1240181, at *13-14 (discussing equitable tolling of the statute of limitations for the plaintiffs' FDCPA claim); id. at *16 (concluding, for the same reasons, that the plaintiffs pled a sufficient basis to support tolling of their UDAP claim against the condominium association).

tolling applies based on fraudulent concealment; and determining the merits of Plaintiffs' position will involve mixed issues of law and fact that cannot be decided in a motion to dismiss.  <u>See Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955)).

The Terrazza AOAO Motion and the Ko Olina AOAO Motion as to Plaintiffs' UDAP claims against the AOAO Defendants in Count III are therefore denied.

## V.   <u>Count IV – FDCPA Claim</u>

The Law Firm Defendants argue that Plaintiffs' FDCPA claims against them fail as a matter of law because "'[n]on-judicial foreclosures are not "actions to collect debt" (at least for purposes of the FDCPA,'" and, "in the context of condominium association foreclosures, this Court has held that 'a nonjudicial foreclosure is not an attempt to collect a debt for purposes of the FDCPA.'"  [Mem. in Supp. of E&M Motion at 35 (quoting <u>Araki v. One W. Bank FSB</u>, 2010 WL 5625969, at *6 (D. Haw. 2010); <u>Kitamura v. AOAO of Lihue Townhouse</u>, 2013 WL 1398058, at *4 (D. Haw. 2013) (Kobayashi, J.)).]  This Court rejected similar arguments in <u>Galima</u> because an attorney representing a condominium association in a nonjudicial foreclosure is not

necessarily in the same position as a foreclosing
lender/mortgagee or the condominium association itself.   See
Galima Order, 2017 WL 1240181, at *11-12.

In the instant case, Plaintiffs allege that "at all
times relevant herein, Law Firm Defendants . . . routinely
demanded sums of money and attempted to collect said sums of
money by sending letters and publishing notices falsely stating
that they were authorized to use Part I to collect delinquent
homeowner assessments."  [Complaint ¶ 52.]  As in the Galima
Order, 2017 WL 1240181, at *13, Plaintiffs have sufficiently
alleged that the Law Firm Defendants are "debt collectors" for
purposes of the FDCPA.

In Galima, however, the plaintiffs included allegations
that the condominium association's lien was for $6,882.86, and
they purchased their unit for approximately $312,000.00.   Id. at
*12.  Based upon the reasonable inferences from the Galimas'
factual allegations, this Court concluded the Galimas pled a
plausible claim that the purpose of the condominium association's
nonjudicial foreclosure was to collect its debt for unpaid
assessments, not to transfer interest in the Galimas' unit.   Id.
In the instant case, although Plaintiffs have included factual
allegations about the purchase prices, and the amount of the
loans they obtained to purchase, their respective units,
[Complaint at ¶¶ 8-9,] the Complaint is silent, however, about

32

the amount of the AOAO Defendants' respective liens for unpaid assessments.  Nor are other factual allegations made that would support a reasonable inference about the purpose of the nonjudicial foreclosures.  Plaintiffs therefore have failed to plead a plausible claim that the purpose of the Terrazza AOAO's nonjudicial foreclosure of the Brown Unit and the Ko Olina AOAO's nonjudicial foreclosure of the Connelly Unit were to collect their respective debts, not to transfer interest in the units. Plaintiffs' FDCPA claims must be dismissed because they fail to state plausible claims for relief.

     The Law Firm Defendants contend that the dismissal should be with prejudice.  "As a general rule, dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1118 (9th Cir. 2013) (brackets, citation, and internal quotation marks omitted).  It is possible for Plaintiffs to cure the defect in their FDCPA claims by pleading factual allegations supporting a reasonable inference that the purpose of the nonjudicial foreclosures was to collect the AOAO Defendants' respective debts.

     While the Law Firm Defendants argue that amendment of Plaintiffs' FDCPA claims would be futile based on an argument that Plaintiffs' FDCPA claims are time-barred, this Court rejects

that argument for the same reasons set forth in the <u>Galima</u> Order, 2017 WL 1240181, at *13-14, and in the discussion of the timeliness of Plaintiffs' UDAP claims against the AOAO Defendants, <u>see</u> *supra* Section IV.B.3.  Amendment of Plaintiffs' FDCPA claims would not be futile.[26]  The dismissal of Count IV is therefore without prejudice.

## VI.  <u>Certification</u>

Defendants have argued that, instead of ruling upon the issues currently before it, this Court should certify one or more questions to the Hawai`i Supreme Court pursuant to Haw. R. App. P. 13.  First, this request is more appropriately addressed in a motion to certify than in memoranda regarding Fed. R. Civ. P. 12 motions.  Second:

> "This court may certify a question to the Hawai`i Supreme Court when it concerns 'law of Hawai`i that is determinative of the cause and . . . there is no clear controlling precedent in the Hawai`i judicial decisions . . . .[']" <u>Saiki v. LaSalle Bank Nat'l Ass'n as Tr. for Structured Asset Inv. Loan Trust Series 2003-BC2</u>, Civil No. 10-00085 JMS/LEK, 2011 WL 601139, at *6 (D. Hawai`i Feb. 10, 2011) (quoting Haw. R. App. P. 13(a)).  The court, however, should not certify questions when the answer is reasonably clear and the court can, using its best judgment, predict how the Hawai`i Supreme Court would decide the issue.  <u>See</u> <u>id.</u> (citing <u>Helfand v. Gerson</u>, 105 F.3d 530, 537 (9th Cir. 1997); <u>Pai`Ohana v. United States</u>, 875 F. Supp. 680, 700 (D. Haw.

---

[26] To the extent the Law Firm Defendants have raised any other arguments in support of their position that amendment of Plaintiffs' FDCPA claims would be futile, those arguments are also rejected.

1995)). . . .

<u>DeRosa v. Ass'n of Apartment Owners of the Golf Villas</u>, CIVIL 15-00165 LEK-KSC, 2016 WL 3951061, at *2 (D. Hawai`i July 20, 2016) (alterations in <u>DeRosa</u>) (some citations omitted).  While it is true that there is no controlling Hawai`i case law, this Court concluded in the <u>Galima</u> Order that it could reasonably predict how the Hawai`i Supreme Court would decide the issues relevant to condominium associations' use of the former Chapter 667, Part I.

Third, it does not seem appropriate to certify questions to the Hawai`i Supreme Court because the same issues may already be pending before the supreme court.  <u>See</u> Terrazza AOAO <u>Galima</u> Mem. at 9 (noting that the plaintiffs in <u>Malabe v. Association of Apartment Owners of Executive Centre</u>, Civil No. 16-1-2256-12 RAN, filed an appeal and the opening brief in that appeal was due on May 31, 2017).[27]  Defendants' arguments regarding certification may be raised more appropriately in a motion to stay this case pending the outcome of the <u>Malabe</u> appeal.

---

[27] The Terrazza AOAO appears to suggest that <u>Galima</u> was wrongly decided because this Court declined to consider the state circuit court's ruling in favor of the condominium association because this Court improperly found that the Malabes had not filed an appeal.  [Terrazza AOAO <u>Galima</u> Mem. at 9 (quoting <u>Galima</u> Order, 2017 WL 1240181, at *6).]  However, even if information about the Malabe's appeal had been available to this Court, it would still have declined to consider the circuit court's <u>Malabe</u> ruling because the circuit court's legal analysis was not clear from the materials from <u>Malabe</u> that were before this Court in <u>Galima</u>.  <u>See</u> <u>Galima</u> Order, 2017 WL 1240181, at *6.

## CONCLUSION

On the basis of the foregoing, Defendant Association of Apartment Owners of Terrazza/Cortbella/Las Brisas/Tiburon's "Motion to Dismiss Class Action Complaint, Filed August 10, 2015 [Dkt 1]," filed September 29, 2016, and Defendant Association of Apartment Owners of Ko Olina Kai Golf Estates and Villas' "Motion for Judgment on the Pleadings on Counts I-IV of Plaintiffs' Class Action Complaint, Filed August 10, 2016," filed October 3, 2016, are HEREBY DENIED; and Defendant Ekimoto & Morris, LLLC's "Motion to Dismiss Class Action Complaint," filed September 28, 2016, and Defendant Porter McGuire Kiakona & Chow, LLP's substantive joinder therein, filed October 14, 2016, are HEREBY GRANTED IN PART AND DENIED IN PART.

The E&M Motion and the PMKC Joinder are GRANTED insofar as: Plaintiffs' claims against E&M and PMKC in Counts II and III are DISMISSED WITH PREJUDICE; and Plaintiffs' claims against E&M and PMKC in Count IV are DISMISSED.  The E&M Motion and the PMKC Joinder are DENIED as to Count I and DENIED insofar as the dismissal of Count IV is WITHOUT PREJUDICE.  This Court GRANTS Plaintiffs leave to file an amended complaint that includes: Count I, as pled in the original Complaint; the claims that Plaintiffs alleged against the AOAO Defendants in Counts II and III of the original Complaint; an amended FDCPA count against the

36

Law Firm Defendants which addresses the defect identified in this Order; and the class action allegations, which this Court did not address in this Order.[28] Plaintiffs shall file their amended complaint by **October 11, 2017.**

Because this Court has given Plaintiffs leave to file an amended complaint, the Terrazza AOAO and the Law Firm Defendants do not need to file answers to the original Complaint. Because this Court has not granted Plaintiffs leave to amend their claims against the AOAO Defendants, the Terrazza AOAO and the Ko Olina AOAO must file their respective answers to the amended complaint by **October 25, 2017**, and they must obtain leave from this Court before filing any Rule 12 motions in lieu of their respective answers to the amended complaint. The Law Firm Defendants must file their respective answers to the amended complaint by **November 1, 2017.**

IT IS SO ORDERED.

---

[28] Plaintiffs' leave to amend is limited to their FDCPA claims against the Law Firm Defendants. If Plaintiffs wish to make any other changes to their original Complaint, they must file a motion to amend pursuant to Fed. R. Civ. P. 15(a).

DATED AT HONOLULU, HAWAII, August 30, 2017.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**BENITA J. BROWN, ET AL. VS. PORTER MCGUIRE KIAKONA & CHOW, ET AL; CIVIL 16-00448 LEK-KSC; ORDER DENYING DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF TERRAZZA/CORTBELLA/LAS BRISA/TIBURON'S MOTION TO DISMISS; DENYING DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF KO OLINA KAI GOLF ESTATES AND VILLAS' MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING IN PART AND DENYING IN PART DEFENDANT EKIMOTO & MORRIS, LLC'S MOTION TO DISMISS; AND GRANTING IN PART AND DENYING IN PART DEFENDANT PORTER MCGUIRE KIAKONA & CHOW, LLP'S SUBSTANTIVE JOINDER IN THE E&M MOTION**